## FRANCIS FARLEY *v.* WILLIAM DE WATERS.

A statute, which, in general terms, gives a court jurisdiction and cognizance of a certain class of actions, except as to the amount of damages which may be claimed, must be regarded as repealing, by implication, a previous statute, by which the court could exercise only a qualified jurisdiction in such actions.

The act of 1848 (Laws of 1848, p. 497, sec. 58), conferring upon the Marine Court jurisdiction in actions for assault and battery, by or against any person on board a vessel in the merchant service, on the high seas, or in a place without the United States, &c., was, by implication, repealed by the act of 1853 (Laws of 1853, p. 1165), which conferred jurisdiction upon that court in all actions for assault and battery, &c., with a limitation only of the amount of damages recoverable.

Hence, the Marine Court has jurisdiction of an action for an assault and battery committed on board a vessel in the merchant service, although not upon the high seas, and not without the United States.

APPEAL by the defendant from a judgment of the Marine Court, at general term.

The action was between two citizens of the State of New York, and was brought to recover damages for an assault committed by the defendant, on board the vessel R. B. Schmidt, of which he was captain, while said vessel was at Light House Inlet, near Charleston, State of South Carolina.

At the conclusion of the testimony, the defendant's counsel moved for judgment, by reason of the want of jurisdiction in the court. The motion was denied, and judgment rendered for the plaintiff, which, being affirmed by the general term of the Marine Court, the defendant appealed to this court.

*Christie & Fairbanks*, for appellant.

*Charles Fraser*, for respondent.

BRADY, J.—The act to simplify and abridge the practice, pleadings, and proceedings of the courts of this State, passed April 12, 1848 (Laws 1848, p. 497, § 58), declared that the Marine

Farley v. De Waters.

Court, of the city of New York, should have jurisdiction in the cases specifically designated, and no other. It conferred jurisdiction in actions by or against any person belonging to, or on board of, a vessel in the merchant service, for an assault and battery, or false imprisonment, committed on board such vessel, upon the high seas, or in a place without the United States, of which the ordinary courts of law of this State had jurisdiction, though the damages exceeded one hundred dollars. The jurisdiction was, therefore, limited to assaults and batteries and false imprisonment, committed on board of a vessel, by a person belonging to, or on board of, such vessel. The section referred to was not changed by the amendments to the Code of 1852 (Laws 1852, p. 651) ; but, by an act passed in the session of that year (Laws, p. 647, sec. 9), the jurisdiction was extended to two hundred and fifty dollars, in all cases in which it was then limited to one hundred dollars. By the act in relation to the Marine Court, of the city of New York, passed July 21, 1853 (Laws, p. 1165), it is provided that the Marine Court, of the city of New York, shall have jurisdiction over, and cognizance of, actions of assault and battery, false imprisonment, malicious prosecution, libel, and slander, where the damages claimed do not exceed five hundred dollars, and that the costs, in all such actions, when prosecuted in any other court in the city of New York, should be limited to the amount which would have been recovered in said Marine Court, if prosecuted therein, but in no such action should the costs exceed the damages recovered. The same act provided for an appeal to the general term of the Marine Court, which the justices were empowered to hold. It is manifest that the legislature intended to enlarge the jurisdic tion of the Marine Court, in actions of assault and battery, whether committed on board a vessel on the high seas, or otherwise. The limited jurisdiction of that court was merged in the larger and more general jurisdiction given by the act of 1853. The legislature not only gave a general jurisdiction of actions of assault and battery, but in actions of slander, malicious prosecution, and libel, of which that court had no previous jurisdiction. Such was not only the intention, but it was designed to relieve the other courts having cognizance of such actions,

where the damages claimed did not exceed five hundred dollars, by limiting the costs to be awarded in such actions to the sum which could be recovered as costs in the Marine Court. If the construction adopted by Judge Cardozo be correct, then, for an assault and battery committed on board a vessel lying at the port of New York, the Marine Court can give no redress to the injured person. I think such is not the law, either in terms, spirit, or intention. The statute of 1853 is sufficiently compre- hensive to include all actions of assault and battery of which the ordinary courts had jurisdiction, provided only, however, that the damages claimed do not exceed five hundred dollars. The act of 1853 necessarily repeals the act of 1848, inasmuch as by the latter act the Marine Court had jurisdiction only of cases where the assault and battery was committed on board a vessel on the high seas, or without the United States, and, by the former act, the jurisdiction of those actions is conferred without any condition or limit, except as to the amount of dam- ages. So far, therefore, as the act of 1848 limits the action to the conditions therein expressed, it is repealed, and, being thus repealed, as it is not in conflict with the act of 1853, and not necessary to perpetuate its object when passed, or to make the latter effective, it must be regarded as repealed for all purposes. I think the judgment should be affirmed, agreeing, as I do, with Judge Cardozo, in the other conclusions to which he has arrived.

DALY, F. J.—Before the passage of the act of July 21, 1853, the jurisdiction of the Marine Court, in actions of assault and battery, was limited to a certain class of cases; but that act declares that the court shall have jurisdiction over and cog- nizance of actions of assault and battery, false imprisonment, malicious prosecution, libel, and slander—jurisdiction in the three last actions, malicious prosecution, libel, and slander, being by that act conferred upon the court for the first time. The only limitation to the jurisdiction thus generally conferred in the five actions named is, that the damages claimed should not exceed five hundred dollars; and that it was the design of the legislature, that the court should have unlimited jurisdiction

in such actions when the damages claimed did not exceed five hundred dollars, is apparent from the subsequent provision, that the costs in all such actions, if prosecuted in any other court in this city, shall be limited to the amount which would have been recovered in the Marine Court, if the action had been prosecuted therein; and that in no such action should the costs exceed the damages recovered. The plain object of this latter provision in respect to costs, is to take away any inducement to bring such actions in the higher courts in this city, except where the plaintiff expects to recover a larger amount of damages than five hundred dollars; for if the recovery is less than that amount, he gets only such costs as are allowed in the Marine Court, and in no event can the costs exceed in amount the damages recovered.

An act which, in general terms, gives a court jurisdiction and cognizance of actions of assault and battery, and false imprisonment, with no limitation except as to the amount of damages which may be claimed, must be regarded as repealing, by implication, a previous enactment by which it could exercise only a qualified jurisdiction in such actions. By the subsequent act, that which was before limited is made general, or rather limited only to the extent expressed in the subsequent enactment.

The case to which Judge Cardozo refers, the original report of which is in Dyer, 131 b, is in no way in conflict with this view of the effect of the subsequent statute. To understand the precise bearing of that decision, it is necessary to look at the original report as well as into the other *Doctor Foster's Case* (in the 11 of Coke, 63), where the reason for the decision is given, and to examine the three statutes, 33 H. 8, c. 23; 35 H. 8, c. 2; and 1 & 2 of Philip & Mary, c. 10, which came under consideration in the decision.

Before the passage of the 33 of H. 8, c. 23, persons guilty of treason had, by the common law, to be indicted within the shire or place where they committed the offense, and to be tried by the inhabitants or freeholders of that place, which appears by the preamble of the statute itself (1 Rastell's Statutes, 757); and that statute was passed, where the treason was confessed,

upon examination before any three of the king's council, or when any three of the council should "vehemently suspect" that the offense had been committed, to empower the crown to issue a commission under the great seal, for the trial of the accused before commissioners in any shire or place which the king might appoint. The statute of 1 Philip & Mary, c. 10, declared that all trials for treason should be according to the course of the common law, and Coke declares that this, by implication, repealed the former statute. The statute of 35 H. 8, c. 2, was passed to empower the judges of the Court of King's Bench, or a special commission, to try cases of treason committed out of the realm of England, the same as if the offense had been committed therein—the preamble of the act reciting that it was doubted whether, by the common law, certain kinds of treason, misprisions, and concealments of treason, perpetrated out of the realm of England, could be inquired of or tried therein (1 Rastell, 839); and it was held, in the anonymous case in Dyer, the treason having been committed in France, that this statute was not repealed by the 1 of Philip & Mary, c. 10, declaring that treasons thereafter should be tried according to the course of the common law, because treason committed out of the realm of England was not, according to the course of the common law, an offense triable in England, for treason, by the common law, had to be tried in the county or shire where the offense was committed. The right to try a man in England for treason committed beyond the sea, was derived solely from the statute of 35 H. 8, c. 2, which provided for the place, for the tribunal, and for the manner in which such an offense should be tried, and which could not be repealed by a statute providing for the trial of treason thereafter according to the course of the common law—the offense for which the previous statute had made provision being one unknown to the common law, and consequently one which could not be tried according to the course of it (Dyer, 131 b; *Doctor Foster's Case*, 11 Co. 63; Staunforde's Pleas of the Crown, 89, 90; Hale P. C. part 1, c. 25). This exposition of the case in Dyer shows that it has no bearing upon the point under consideration. I agree with Judge Brady, that the judgment should be affirmed.

CARDOZO, J. (dissenting).—The case of *Moloney* v. *Dows* (8 Abb. P. R. p. 316) seems to be misunderstood. It is sometimes cited as an authority that the courts of this State have no jurisdiction over actions for trespass to personal property. It was shown in *Smith* v. *Butler* (1 Daly, 508) to have no such effect. It is now relied on as establishing, that an action cannot be here maintained between residents of this State for an assault and battery committed in a foreign country. This is also a misapprehension. Giving that decision its fullest effect, it simply holds that the courts of this State will not take cognizance of an action between two citizens of another State, for a tort committed by one on the person of the other in the State within which both of them resided when the wrong was perpetrated. That case, therefore, has not the slightest application to the present, in which it appears that though the wrong was committed out of this State, both parties were and are residents of it. If this were the only question arising here, I should think the judgment right. But it is claimed, that the Marine Court had not jurisdiction of the subject matter of the action because the Code (section 68, original [Code of 1848] § 58), which is substantially, in this respect, a re-enactment of the act of 1813 (2 R. L. 1813, p. 381, § 106) gives (sub. 4) to the Marine Court jurisdiction of actions for assault and battery only when brought by or against a person belonging to, or on board of, a vessel in the merchant service, and when the wrong was committed on board of such a vessel upon the high seas, or in a place without the United States. It is conceded that the assault and battery complained of, was not committed on the high seas, nor in a place without the United States. Both plaintiff and defendant swear that, when the acts complained of were done, the vessel was lying ashore at Light House Inlet, in the State of South Carolina. The assault and battery, therefore, was not committed on the high seas, nor at a place without the United States, but, on the contrary, occurred in the State of South Carolina, within the United States. The plaintiff, in reply to this objection, relies upon the statute of 1853 (Session Laws of 1853, p. 1165), by which it is provided (§ 1), that "the Marine Court of the city of New York shall have

jurisdiction over, and cognizance of, actions of assault and battery, false imprisonment, malicious prosecution, libel, and slander, where the damages claimed do not exceed five hundred dollars ; " and it is insisted that this provision is inconsistent with the previous statutes, to which I have referred, and that, therefore, there is no longer any restriction upon the jurisdiction of the Marine Court (except as to amount) in actions of this description. The question is, whether the provisions of the Code are in conflict with the statute of 1853, and, therefore, to be deemed repealed. I think not. The provision referred to, and which was in existence when the act of 1853 was passed, is not mentioned in, and expressly repealed by, the latter statute, and it will, therefore, be our duty to declare it to be still in force, unless there is such a manifest incongruity between it and the subsequent legislation, as makes it impossible that the two should coexist.

This rule is well settled (see *People* v. *Deming*, 1 Hilt. 271).

In Sedgwick on Statutory and Constitutional Law, it is laid down (p. 123), that, " when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that it shall have any meaning at all ; " and *Forster's Case* (11 Rep. 63), is cited, in which it was said, that the statute of 1 & 2 Philip & Mary, c. 10, declaring that all trials for treason should be according to the course of the common law, and *not otherwise*, did not work a repeal of the statute of 35 Henry VIII. c. 2, which authorized trials for treason beyond the sea. In other words, that legislation for a special class of cases is not necessarily repealed by subsequent statutes of a general character, not inconsistent with the prior more pointed ones. Now it is clear that the act of 1853, may have meaning and effect without reading it as removing the limitation I have mentioned. The act of 1813 and the Code denied jurisdiction to the Marine Court in actions of this character, except when brought by or

Farley v. De Waters.

against a person belonging to, or on board of, a vessel in the merchant service, and for a wrong committed on the high seas, or without the United States. So that, as the law stood before 1853, the Marine Court had no jurisdiction of an action for an assault and battery if committed in this State. It may very well be, that the legislature, dealing with the general jurisdiction of the court upon the subject of actions for assault and battery, and the like, thought it wise to extend it as a general rule, and as to persons generally, while it did not design or think it wise to do so as respects a certain specified class of persons.

The previous legislation regulated the jurisdiction of the court when actions of this nature were brought " by or against a person belonging to, or on board of, a vessel in the merchant service."

The new jurisdiction, conferred in general language, has a large field to work upon. It takes in all actions of this character *not* brought by or against a person belonging to, or on board of, a vessel in the merchant service, and I am, therefore, of opinion that the general words do not remove the limitation of jurisdiction as to the one class of persons which is created by the previous more special and pointed statutes.

Both acts may stand without any inconsistency. Together their effect is that, as a general rule, the Marine Court has jurisdiction of this class of cases, but when the action is brought by or against a person belonging to, or on board of, a vessel in the merchant service, it is deprived of jurisdiction, unless the cause of action arose either on the high seas, or without the United States.

In other words, one act is general in its character, and the other affects special cases.

There is no incongruity in such legislation. This construction gives force and vitality to both statutes, and is not inconsistent with either. It follows that, as this action was brought by a person within the class specially legislated about, and that the cause of action did not arise either on the high seas, or without the United States, the court below had no jurisdiction, and the judgment should be reversed.

Judgment affirmed.