*Horse railroad companies—right of, to consolidate under chapter* 108 *of* 1875 *and chapter* 387 *of* 1883.

Under chapter 108 of the Laws of 1875, and chapter 387 of the Laws of 1883, "in any case where two or more railroad companies shall have been, or shall hereafter be, organized under the laws of this State, the whole of whose lines, as located by them, respectively, shall form one continuous and connecting line of road," although such roads may have been organized, and may be transacting business as horse railroad companies, such companies are authorized to consolidate their respective roads.

*Semble,* that the provision in section 3 of chapter 917 of the Laws of 1869, that "nothing herein contained shall apply to street railroads," is limited in its effect to that section of the act, but the provision in section 7, "nor shall this act apply to street railroads," excludes street railroads entirely from the operation of the act of 1869.

APPEAL from an order made at Special Term in Broome county, and entered in the Broome county clerk's office January 23, 1889, denying the prayer of the petitioner for the appointment of commissioners to ascertain and determine the point and manner of crossing, and the compensation to be paid to the Syracuse, Binghamton and New York Railroad Company for the use thereof; and also an appeal from the judgment entered in said county clerk's office January 23, 1889, upon said order.

At the close of the findings of fact made by the Special Term the conclusion of law thereon was stated as follows: "That the proceedings taken by the 'Washington Street, State Asylum Railroad Company' and the 'Park Avenue Railroad Company' to merge and consolidate their stock, franchise and property into a new company, 'to be known as the Washington Street, Asylum and Park Railroad Company,' were without authority of law, and were inoperative and void, and for such reason the petitioner in this matter never acquired any lawful existence as a corporation. That it is not, and never has been, a legally organized corporation, affected by or entitled to avail itself of any of the provisions of chapter 140 of the laws of 1850. That for such reasons the petitioner is not entitled to acquire a crossing over the defendant's road. And its application for the appointment of commissioners for such purpose should be denied."

It was also found as a fact that the Washington Street and State Asylum Railroad Company "filed articles of association in the office of the secretary of State on or about October 23, 1871, and thereafter acted as a corporation; and, in the year 1872 constructed, and had ever since, up to the time of the consolidation hereinafter mentioned, operated and claimed to own a street railroad in Robinson street aforesaid. That said articles of association, so filed, in form were in accordance with the provisions of said act of 1850, and the amendments thereof, and all the proceedings in relation to such organization, in form and manner, were in accordance with and in conformity to the provisions and requirements of said law of 1850.

"That in June, 1881, certain other persons had taken like proceedings to incorporate themselves under the laws of 1850, and amendments thereto, as the Park Avenue Railroad Company, to construct, maintain and operate a street railroad in said city of Binghamton, and on May 6, 1882, filed articles of association in the office

of the secretary of State, and thereafter acted as such corporation. That said articles of association and incorporation, in form, were in accordance with the requirements of said law of 1850, and all the proceedings in relation to such organization, in form and manner, were in accordance with and in conformity to the requirements of said act, except it was written in such articles, and they show upon their face, the object and purpose of the corporation was to construct and operate a street railroad, using animal power as its motive power."

" In the autumn of 1887, such two companies being then engaged in operating continuous lines of street railroads in the city of Binghamton, proceeded, in manner and form, as required by the existing laws of this State, relating to the consolidation of railroad companies, to merge and consolidate their capital stock, franchise and property, and to thereby form a new corporation by the name of the Washington Street, Asylum and Park Railroad Company, for the purpose of operating the continuous line of their said street railroads.   On the 4th day of October, 1887, they filed their agreement and the certificates required by such laws in the office of the secretary of State, and all the proceedings taken by them for the purpose were in conformity with the requirements of such laws.   The agreement so filed recited that they made such merger and consolidation, one with the other, ' in pursuance and by virtue of the provisions of chapter 108 of the Laws of 1875, and the acts amendatory thereof, and the several acts therein referred to.'   The petitioner in this matter is the company so claimed to have been formed by consolidation, and *ever since the 4th day of October, 1887, it has operated and managed*, and now is operating and managing the street railroad described in the petition, claiming to be a duly organized corporation with power and authority to own, use and operate the same.

" That the said Washington Street and State Asylum Railroad Company heretofore constructed its tracks in Robinson street over and across the tracks of the Syracuse, Binghamton and New York Railroad Company's railroad, nearly at right angles and at grade without having instituted any proceedings to acquire the right to construct such crossing by condemnation and without having obtained any deed or consent, by writing or otherwise, from the Syracuse, Binghamton and New York Railroad Company, or its

predecessors in title, or any one acting in their behalf. Neither had the petitioner instituted such proceedings or obtained such consent or deed."

It was also found that the Washington Street and State Asylum Railroad Company, since 1874, maintained and operated its railroad over and across the tracks of the Syracuse, Binghamton and New York Railroad Company's road in said Robinson street, and in so doing ran its cars across the tracks of the Syracuse, Binghamton and New York Railroad Company's said railroad during the past two years four times each hour, and prior to that time twice each hour, for fifteen hours each day.

*George Whitney* and *W. J. Welsh*, for the appellant.

*D. S. & R. B. Richards*, for the respondent.

HARDIN, P. J.:

Assuming, as was held at the Special Term, that the Washington Street and State Asylum Railroad Company was organized under the general railroad act of 1850, and the amendments thereto in 1871; and the Park Avenue Railroad Company was organized under the same statute in 1882, and were being operated under their charters, and were existing railroad corporations under the laws of this State, the important inquiry presented by the appeal here is in regard to their ability or authority to consolidate in virtue of the laws of this State, as they assumed to do in 1887. Chapter 917 of the Laws of 1869 authorized the consolidation of " certain railroad companies." (See title of the act.) The act provides: " It shall and may be lawful for any railroad company or corporation organized under the laws of this State, or of this State and any other State, and operating a railroad or bridge, either wholly within or partly within and partly without this State, to merge and consolidate its capital stock  *  *  *  with the capital stock, franchises and property of any other railroad company or companies organized under the laws of this State, or under the laws of this State and any other State, or under the laws of any other State or States, whenever the two or more railroads of the companies or corporations so to be consolidated shall or may form a continuous line of railroad

with each other, or by means of any intervening railroad bridge or ferry."

This statute contains ten sections perfecting a system or mode of consolidation. In the third section it is declared that corporations, upon filing the agreement of consolidation, "shall be deemed and taken to be one corporation by the name provided in said agreement and act." That section also contains a restriction upon the fare to be taken by the New York Central Railroad to two cents per mile, "and no more, wherever it is now restricted to that rate of fare; but nothing herein contained shall apply to street railroads." It may be inquirable as to the last sentence found in section 3, whether it is not limited to the provision of the section, instead of being intended to apply to the said provisions of the whole act. The words "but nothing herein contained" may have full effect by restricting their meaning to the provisions of the section in which they are found. Such would seem to be the effect of their insertion.

In section 7 of the act it was provided that "nothing in this act contained shall be so construed as to allow such consolidated company to charge a higher rate of fare per passenger per mile, upon any part or portion of such consolidated line, than is now allowed by law to be charged by each existing company, respectively; nor shall this act apply to street railroads." If the limiting words found in section 3 apply to the whole act, and exclude from its operation street railroads, the insertion in section 7 of the words "nor shall this act apply to street railroads," would seem to be superfluous; however, the force of the words in section 7, "nor shall this act apply to street railroads," clearly was to exclude from the operation of the act street railroads; or, to put the idea in another form, the legislature, by the act of 1869, authorized steam roads to consolidate; it did not authorize street roads to consolidate by the terms of that act. The use of the words "nor shall this act apply to street railroads," found in section 7, clearly indicates that the legislature supposed that the use of general words in section 1 would make its provision applicable to street railroads, unless the words of exclusion found in section 7 were inserted in the act. It may be observed, therefore, that the general words in section 1 of the act were broad enough to include all railroads, both steam and street. The pertinency of this observation will be more apparent when we come to

consider the act of the legislature passed in 1875, found in chapter 108 of the laws of that year. The title is "An act in relation to railroad corporations." It may be observed, in passing, that the title is general; contains nothing in its language to indicate that it was an amendment of any preceding law; its provisions are in the nature of an enabling act, and each and every of its provisions are entitled to receive full force, and should be applied to all cases named therein, and all classes of railroads embraced within its general provisions. Its language is as follows: "Section 1. In any case where two or more railroad companies shall have been, or shall hereafter be, organized under the general laws of this state, the whole of whose lines, as located by them, respectively, shall form one continuous and connecting line of road, the said companies may consolidate their lines of road, stock, franchises and property according to the existing laws of this State relating to the consolidation of railroad companies; and any such consolidated company may thereupon construct or finish the construction of such continuous line of railroads and operate the same, subject to all provisions of law applicable to railroad corporations organized under the said general laws, so far as not inconsistent with this act; but this act shall not in any manner affect the existing laws regulating the rate of fare on any railroad." This language is broad and comprehensive. Surely, if the language of section 1 of the act of 1869 was broad enough to cover street railways, as was evidently so understood by the legislature, as is evidenced, as we have seen, by the insertion of a positive limitation of its application to roads other than street roads, surely the words of section 1 of the act of 1875 are sufficiently comprehensive to embrace both classes of roads, those operated by steam and those known in the legislation of the State as street railroads. An examination of section 1 of the act of 1875 indicates an intent on the part of the legislature to authorize, not only the roads that "have been," but the companies that should be organized after its passage, "under the general laws of this State." If we could find in the title of the act of 1875, or in the phraseology of the body of the act, any evidence of an intent on the part of the legislature to amend the act of 1869, we might find a view favorable to the contention of the respondent. However, in consideration of the title of the act of 1875, the unqualified language used in the

body of the act, presents very clearly, evidence of an intention on the part of the legislature to authorize the consolidation of roads not mentioned in any preceding legislation.

This act was amended in 1883 by chapter 387. The act of 1883 purports to be an amendment of the law of 1875, as it is entitled "An act to amend chapter 108 of the Laws of 1875," etc., and, in its various sections, it provides that chapter 108 of the Laws of 1875, entitled "An act in relation to railroad corporations," is amended so as to read as follows. Here we have a clear intention expressed by the legislature, in the title of the act and in the body of the act, to amend the act of 1875. No such evidence of any intent to amend the act of 1869 is found in the act of 1875. In the act of 1875 it was provided that "where two or more railroads shall have been, or shall hereafter be, organized under the general laws of this State," while in the act of 1883, the same words are used except the word "general" is omitted in referring to the laws of this State, and in the latter part of the section the word "general" is omitted in the act of 1883, although found in the act of 1875. The omission of the word "general" in the act of 1883 would seem to have been for the purpose of allowing the provision found in the act of 1875 to apply to any railroads organized under the laws of the State, and to include those corporations that were organized in virtue of special acts, and to obviate the limitation to railroad companies organized under the general laws of the State. It is probable that the expression "general laws of the State" limited the application of the provisions of the act of 1875 to such railroad companies as were organized under the general railroad law of 1850, and the acts amendatory thereof. Even this change favors this construction which we are inclined to give to the act of 1875. It is not unreasonable to suppose that if the legislature had intended to limit the application of the act of 1875, or the amendment thereof in 1883, to steam roads it would have inserted therein a provision in express terms restricting its application to such roads. (*Ellice* v. *Winn*, 12 Wend., 343 ; *Farley* v. *De Waters*, 2 Daly, 192 ; *Norris* v. *Crocker*, 13 How. [U. S.], 439.)

We are inclined to the conclusion that it was the intention of the legislature, by the acts of 1875 and 1883, to authorize "in any case where two or more railroad companies shall have been, or shall

hereafter be, organized under the laws of this State, the whole of whose lines, as located by them, respectively, shall form one continuous and connecting line of road," such companies to consolidate. We are, therefore, of the opinion that the agreement filed in 1887, effectuated a consolidation of the two roads mentioned therein, and that the petitioner from that time became a corporate body, and thereby became subjected to the regulations and restrictions of the general railroad law of 1850, and the acts amendatory thereof, so far as the same are applicable, and also entitled to the benefits and privileges thereof. It follows, therefore, that the conclusion at the Special Term denying the motion for the appointment of a commission to settle the manner of crossing and the compensation therefor was improperly denied.

We think the order and `judgment entered thereon should be reversed, with costs, and the petitioner allowed to bring its application before a Special Term held in the sixth judicial district, upon giving eight days' notice thereof, and then and there apply for the appointment of commissioners.

The order and judgment should be reversed, with costs, and proceedings remitted to the Special Term for further action.

MERWIN, J., concurred; MARTIN, J., not voting.

Order and judgment reversed, with costs, and the proceedings remitted to the Special Term for further action.