Scofield, J.,
delivered the opinion of the court:
This case comes up on demurrer. The facts are stated in the petition and in the following letter of the Secretary of the Treasury, attached thereto:
“Treasury Department,
“Office of the Secretary,
u Washington, JD. C., November 6, 1885.
■ “ George A. King, Esq.,

“Attorney for G. Alexander Ramsay,

“1420 New Yorlc Avenue, Washington, T). G.:
Sir: In your letter of the 31st ultimo, in behalf of your client,' G. Alexander Ramsay, you state that all you ash is ‘that you, *445 Mr. Secretary, will adjudicate and decide upon the evidence before you a plain, simple question of fact, never before considered or decided in any manner by yourself or any of your predecessors, or any of your or their assistants, namely, whether Mr. Ramsay was, or was not, the first informer whereby the sum of $5,000 penalties and $10,694.03 tax, interest, and costs were recovered from the Houston and Texas Central Railway Company for frauds upon the revenue; and that, having decided this question, you will refer the case to the Court of Claims, under section 1063 of the Revised Statutes, for trial and adjudication.’
“ In reply, 1 have to say that the claim of your client referred to, although presented to the Secretary of the Treasury in the year 1875, as shown by the records of this office, has never been formally rejected by any Secretary of the Treasury. .
“The records also show that no Secretary of the Treasury has ever ascertained and determined whether there was any informer in the case referred to, nor has it ever been, determined and declared formally by any Secretary whether your client, Mr. Ramsay, was or was not the first informer in this case.
“All that is shown by the records of this office on this point is that Mr. Ramsay was notified by the Commissioner of Internal Revenue that he was not entitled to the share for which he made application, because the act of June 6,1872, repealing informers’ shares, went into effect before the case in which he claimed the share had been compromised, and that the claim was merely marked “too late,” that no finding or award was made, and that no letter of rejection was written by the Secretary to the claimant.
“ In this state of the case I see no objection to complying with your request so far as to state that it clearly appears from the evidence on file in this case that your client, Ceorge Alexander Ramsay, was the first informer against the Houston and Texas Central Railway Company, and that the information given by him led to the recovery from said company of penalties amounting to $5j000.
“ The informer’s share of that amount would have been $ 1,700, under the schedule of shares prescribed by the Secretary of the Treasury in a circular issued by bin» August 14,1866, pursuant to the-authority conferred by section 179 of the Act June 30, 1864 (13 Stat. L., 305), as amended by the Act July 13, 1866 (14 id., 145). This amount was not paid, because said section .179 was repealed by section 39 of the Act June 6, 1872 (17 id., 256), which took effect August 1, 1872 (§ 47), and the Department held, under the wording of said section 179, viz: ‘That no right accrues to or is vested in any informer in any case until the fine, penalty, or forfeiture in such case is fixed by judgment or compromise, and the amount or proceeds shall have been paid;” that, unless the amount of *446 the iine, penalty, or forfeiture hail been both fixed and -paid to the Government prior to August 1, 1872, no share of the same could be paid to the informer, and that, as the case in question was not compromised until in 1874, Mr. Ramsay was not enti-. tied to receive the allotted share.
“That the present Secretary is not bound to accept and act upon this construction of the law is made plain b.y the decision of the Supreme Court of the United States in the case of the United States v. MacDaniel (7 Peters, 1), wherein it said: ‘It will not be contended that one Secretary has not the same power as another to give a construction to an act which relates to the business of his Department-.’
“Nevertheless, as the construction referred to has been applied, as I am informed, to a large number of cases, and has been acquiesced m 1rom 1875 to the present time, I prefer not to set it aside without the authority of a judicial construction, and therefore I decline to award or order the payment of the share claimed by Mr. Ramsay in this case.
“It is presumed that upon this official action your client will now be in a condition to prosecute his claim in the Court of Claims, and that that court will have full jurisdiction of the case.
“Very respectfully,
“ D. Manning, Secretary.”
The case turns upon the construction to be given to the statutes, which we shall quote, and to the force aud effect of the Secretary’s letter.
It is not denied that the claimants’ intestate was the first and only informer against the Houston and Texas Central Railway Company, and that the information furnished by him led to the recovery of taxes aud interest amounting to $10,694.03, and penalties amounting to $5,000. Nor is it denied that the informer’s share of these penalties, under the law and regulations of the Secretary, amounted to $1,700. (Act July 13,1866, ch. 184, § 9, amending § 174 of the Act 1864, 14 Stat. L., 145.) But several objections are urged against a recovery.
(1) The statute under which the information was given was repealed before the penalties were fixed and paid. The repealing act (17 Stat. L., 256), which took effect August 1,1872, is as follows:
“ That so much of section 179 of the act of. July 13, 1866, as provides for moieties to informers be, and the same is hereby, repealed; and the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, is hereby authorized to pay such sums, not exceeding in the aggregate the amount *447 appropriated therefor, as may, in his judgment, be deemed necessary for detecting' and bringing to trial and punishment persons guilty of violating the internal-revenue laws, or conniving at the same, in cases where such expenses are not otherwise provided for by law ; and for this purpose there is hereby appropriated $100,000, or so much thereof as may be necessary, out of any money in the Treasury not otherwise appropriated.”
It will be observed that the informer’s share was earned before the repealing aeffwas passed, but the condition which was to precede payment had not then happened and did not happen until June, 1874, nearly two years after. The service upon which the claim is based had not only been rendered but it had been recognized and acknowledged by the Department; It had ¡not been paid for, because its value could not, under the law, be ascertained until it was known how much benefit the (Government would derive from it. If, in the end, money should be brought into the Treasury in the shape of penalties through his services, the informer was to have hii share of it; otherwise, he was to have nothing for his time and trouble. The repeal of the law did not blot out the fact that the service had been rendered, nor did it forbid the officers of the law to use 'the information for the benefit of the Government. On the ■contrary, they were specially authorized, through this information, to collect the delinquent taxes and to assess and collect penalties. Nor did it forbid the Secretary to accept of such service in the future, but only provided a different mode of compensation.
Why, then, should not the claimants be paid for this service? Because it is said the law provides “ that no right accrues to or is vested in any informer in any ease until the fine, penalty, or forfeiture in such case is fixed by judgment or compromise, and the amount of proceeds shall have been paid, when the informer shall become entitled to his legal share of the sum ■adjudged or agreed upon and received.”' [Act July 13, 1866, L4 Stat. L., 14<>.)
The right to demand payment does not accrue or vest under this law until the penalty is actually paid into the Treasury. Of course not. That is the agreement. But the law does not thereby intend to say that after the information is given, accepted, and acted upon, no obligation rests upon the Government to stand by its promise, after the penalty is paid into the Treasury. It caunot be that Congress intended to accept the *448 fruits of this, always unpleasant and often dangerous service, and in the same paragraph repudiate its promise to divide. This repealing law does not prohibit payment for this kind of information. On the contrary,’it exchanges this uncertain and contingent njode of compensation in the past for an agreed and certain one in the future. It can hardly be supposed that in making this change Congress intended to provide that services already rendered should be paid for neither under the old nor the new system.
The authorities cited relate only to cases where the law giving a penalty is repealed. There is no doubt that the repeal of such a statute puts an end to all actions for penalties pending under it. That is not this case. The law giving a penalty was not repealed. It was the power to promise to an informer a share of the penalty that was repealed. This repealing act, in effect, provided that no more such promises should be made; but it did not, at least in terms, provide that promises already given and entirely fulfilled by the promise should be recalled without recompense.
' The repealing act has a saving clause which throws some light upon this question. It is as follows :
“That all acts and parts of acts inconsistent with the provisions of this act are hereby repealed: Provided, That all the provisions of said act shall be in force for levying and collecting all taxes properly assessed, or liable to be assessed, or accruing under the provisions of former acts, the right to which has has already accrued, or which may hereafter accrue, under said acts, and for maintaining, continuing, and enforcing liens, fines, penalties, and forfeitures incurred under and by virtue thereof. And this act shall not be construed to affect any act done, right accrued, or penalty incurred under former acts, but every such right is hereby saved, and all suits and prosecutions for acts already done in violation of any former act or acts of Congress relating to the subjects embraced in this act may be commenced or proceeded with in like manner as if this act had not been passed.”
This is not as clear as it might be, but, taken-in connection with other considerations, we think it should be held to save the contingent rights of the claimants, if they would otherwise be lost.
(2) It is contended that the Secretary of the Treasury alone has power to adjudicate the rights of informers under the Act July 13, 1866 (14 Stat. L., 145). The clause relating to this *449 case says: “The Secretary of the Treasury, uuder general regulations to be by him prescribed, shall determine whether any claimant is entitled to such share as above limited, and to whom the same shall be paid, and shall make payment accordingly.” The defendants are doubtless.right in this contention.
The Secretary, however, has decided that “George Alexander Ramsay was the first informer against the Houston and Texas Central Railway Company, and that the information given by him led to the recovery from said company of penalties amounting to $5,000; ” and that “the informer’s share would have been $1,700, under the schedule of shares prescribed by the Secretary of the Treasury in a circular issued by him August 14, 1866.” The Secretary adds that “ this amount was not paid because section 179 was repealed by section 39 of the Act JuneG, 1872” (17 Stat. L., 256). The Secretary .concludes his letter as follows :
“Nevertheless as the construction referred to has been applied, as I am informed, to a large number of cases, and has been acquiesced in from 1875 to the present time, I prefer not set it aside without the authority of a judicial construction, and therefore I decline to award or order the payment of the share claimed by Mr. Ramsay in this case.
“ It is presumed that upon this official action your client will now be in a condition to prosecute his claim in the Court of Claims, and that that court will have full jurisdiction of the case.”
Thus it appears that the Secretary did, on November 6,1885, decide all the material facts in the case, and that the claimants’ intestate was entitled to $1,700 the informer’s share under the act of 1866. That was all he was required or authorized to decide under that act. There was nothing more for him to decide, but there was something more for him to do, to wit, to “make payment accordingly.” This injunction he has not followed, and-therefore the claimants come to this court.
The Secretary gives his reason for not paying the claim, or, as he states it, for declining “ to award or order payment,” that section 179 was repealed and he was in doubt Whether his authority to make payment was not thereby taken away.
We are inclined to believe that the failure “ to award or order payment,” so far from depriving this court of jurisdiction, is the very fact out of which jurisdiction arises. It is the neglect to pay the amount found by the Secretary to be due to the claimants *450 that they complain of. The question whiob the Secretary has failed to decide, to wit, whether the act of 1872 forbids the payment of the informer’s share, is a question which he was not required or authorized to decide under the act of 1866. Indeed, the question did not arise iindm? that act, but under the act of 1872, and therefore the decision of it was not given exclusively to him. The qm-stion arose only in the ordinary administration of his office. It is a proper question for the courts. The Secretary so regarded it, and intimated to the claimants that it should be decided by the Court of Claims.
When the case of Ramsay (14 C. Cls. R., 357) was before the court several years ago, and was dismissed for want of jurisdiction, the Secretary of the Treasury had made no decision on the merits in favor of the claimant, and we held that such a decision in the matters intrusted to his determination in the act of 1866 was necessary before an action could be maintained by one who claimed to be an informer.
The facts found do say, following the language of the petition, that the Secretary had rejected the claim, but, it was added, “for the reason stated by the Commissioner” in his letter therein set out. From that letter it appears that the Commissioner held that the claimant did not appear to be entitled to any compensation, because the act authorizing it had been repealed; that is, he merely declined to act upon the material questions which, if decided in the claimant’s favor, would have laid the foundation for an action in this court, even if the Secretary had refused to pay this amount.
Since then the Secretary has decided the material facts in favor of the claimants, and therefore this action may be maintained.
The demurrer is overruled with leave to the defendants to plead to the petition within ten days. If the defendants decline so to plead judgment will be entered for the claimants in the sum of $1,700.
WeldoN, J., was prevented by illness from sitting in this case and took no part in the decision.