BiohakdsoN, Oh. J.,
delivered the opinion of the court:
The claimant, in his petition, sets out a contract, made under the direction of Gen. John 0. Fremont, while in command of military forces of the United States at Springfield, Mo., in the autumn of 1861, for the performance of certain duties as a spy.
In Totten’s Case (92 U. S. R., 105) the Supreme Court held that the President in time of war had a right to make such contracts binding on the United States. The general officers of the Army in the field are under the actual or implied direction of the President in all their movements, and their contracts in the line of their duty must be held to be made by his authority. That the employment of spies are directly and peculiarly within the line of duty of a commanding general in *91 actual warfare can not be doubted. Their character and employment are as old as the art of war and as necessary, often, as implements of warfare.
That being the case, the claimant bad a cause of action upon wbicb suit might have been maintained in this court unless excluded from its jurisdiction for special reasons, which we shall consider later.
To such a claim, if within the jurisdiction of the court, there is a statute bar much more pronounced than any mere statute of limitations, which bars the remedy only and not the claim. It is in these words:
“Sec. 1069. Every claim against the United States, cognizable by the Court of Claims, shall be forever barred unless the petition setting forth a statement thereof is filed in the court or transmitted to it by the Secretary of the Senate or the Clerk of the House of Representatives, as provided by law, within six years after the claim first accrues: Provided, * * * [sewing rights of persons under eertam disabilities].”
The Bowman act, under, which this case was transmitted to the court by a committee of the House of Representatives, provides in section 3 (1 Supp. Rev. Stat., 2d ed., p. 403), as follows :
“Nor shall the said court have jurisdiction of any claim against the United States which is now barred by virtue of the provisions of any law of the United States.”
At first view this provision would seem to exclude from our jurisdiction all claims to which section 1069 of the Revised Statutes is applicable. But, considering the object of the act, which is declared by its title to be “An act to afford assistance and relief to Congress and the Executive Departments in the investigation of claims and demands against the Government,” and knowing that there were many cases pending in the Departments and in Congress which had accrued more than six years previously, and giving a liberal interpretation to the act in order to accomplish its object, the court early held that the-bar of Revised Statutes, section 1069, did not apply to a claim which was barred from the general jurisdiction of the court if it still could be considered and paid by any Executive Department — that the bar intended is a complete bar in the Departments as well as in the courts; that while there is any avenue open to the claimant through which he can have his claim adjusted and paid it is not barred within the meaning of the act, *92 and can be transmitted to this court by the head of a Department or by a committee of Congress, and the court can take jurisdiction.
The rejection of a claim by executive officers alone does not of itself bar a claim, but it removes an obstacle in the way of the operation of the statute of limitations, and allows the latter to apply with full force. The act has received interpretation in the following cases reported in the Court of Claims lie-ports: McClure, 19, p. 18; Dunbar, 19, p. 489; Ford, 19, p. 519; Dennis, 20, p. 119; Blair, 21, pp. 253; McDonald, 21, p. 320; McLenare, 21, p. 327; Mitchel, 21, p. 466; Vance, 21, p. 488; Norfolk Tr. Co., 23, p. 19; Furlong, 23, p. 32; Belt, 23, p. 317; Dennis, 23, p. 324; Kimbrough, 25, p. 21; Nutt, 26, p. 15.
The avenue open to the claimant for the settlement of his claim was the War Department, where it accrued and which alone had authority to settle and adjust it. It was peculiarly and exclusively within the jurisdiction of that Department to determine the validity and amount before it could have any standing with the accounting officers, as it is to be inferred from the language of the Supreme Court in Totten’s case, like claims for the refund of internal-revenue taxes, which the Supreme Court held in Kaufman’s Case (96 U. S. R., 570), affirming the judgment of this court (11 C. Cls. R., 659), must be first submitted to the Commissioner before any liability is fixed. They say:
“It is not the allowance of an ordinary claim against the Government, by an ordinary accounting officer, but the adjudication by the first tribunal to which the matter must by law be submitted. Until so submitted, and until so adjudicated, there is not even a 'grima facie liability of the Government; but when submitted, and,when allowed upon the adjudication, the liability is complete until in some appropriate form it is impeached.”
The claimant has in fact been to the War Department, as he admits in his brief, where he states as follows:
“The claim was presented to the Quartermaster-General in April, 1868, with evidence to sustain it. It was suspended by the War Department in August, 1869, for the claimant to obtain the testimony of Gen. Frémont, and it was subsequently rejected in 1870.”
The claim having been rejected bythe War Department, and the only avenue for its settlement by the executive officers hav *93 ing tbns been closed against it, the bar of section 1069 of tlie Be-yised Statutes is left to apply to it with all its force and effect, if this court ever bad jurisdiction of the cause of action.
But another reason why the court can not find the facts, even if it never had jurisdiction under its general powers and the statute of limitations never did apply to it. The claim is for services as a spy. The Supreme Court says in Totten’s Case (96 U. S. R., 105, 107):
“It may be stated as a general principle, that public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law would regard as confidential, and respecting which it will not allow the confidence to be violated. On this principle, suits can not be maintained which would require a disclosure of the confidences of the confessional, or those between husband and wife, or of communications of a client to his counsel for professional advice, or of a patient to his physician for a similar purpose. Much greater reason exists for the application of the principle to the cases of contracts for secret services with the Government, as the existence of a contract of that kind is itself a fact not to be disclosed.”
A claim which, to investigate in a court of justice, is decided to be against public policy, and which is alone cognizable by the War Department, where it has been considered and rejected, is effectually excluded for the jurisdiction of this court to find and report the facts to Congress. It can hardly be conceived that Congress intended, by the Bowman act, to authorize a committee of either House to use this court for the investigation of claims founded on confidential contracts for the services of a spy in time of war, when the disclosure of the facts in such case is decided by the Supreme Court to be against public policy.
What Congress may do, acting by both Houses, or what one House alone may do, by special resolution, in the investigation of such a contract by their committees, is not considered in this case, and we express no opinion thereon.
The clerk will transmit a copy of the petition and of this opinion to the Committee on War Claims of the House of Bep-resentatives.