Campbell, Chief Justice,
delivered the opinion of the court.
Motions have been made by the defendants to dismiss certain cases under the provisions of the act of March 4, 1915. These cases were referred by one or the other of the Houses of Congress to this court under section 14 of the *295 Tucker Act or section 151 of the Judicial Code. The bills so referred involve claims which may be stated as follows:
1. The claim of Benjamin S. Chase, administrator of the estate of Benjamin Chase, deceased, was referred by the Senate on the 29th day of May, 1908, under the Tucker Act, and bylfche petition filed in this court on the 19th day of January, 1909, is shown to be for the value of 250 bales of cotton alleged to have been taken from the claimant’s decedent by the military authorities of the United States and turned over to the proper authorities of the Treasury Department, by whom it was sold and the proceeds paid into the Treasury of the United States. We must assume for the purposes of this motion that the statements of the petition are true, but the said claim does not come within the provisions of section 162 of the Judicial Code, whereby this court is given jurisdiction to hear and determine certain claims for cotton taken after June 1, 1865.
2. The claim of the estate of Joseph Lippman, deceased, was referred by the Senate on the 27th day of June, 1910, and the petition claims for stores and supplies alleged to have been taken by proper authority of the Quartermaster’s Department from the said decedent in'the years 1864 and 1865 in Chatham County, Ga.
3. The claim of Frank H. Walker and Frank E. Smith was referred by the House on the 13th day of February, 1915, under the Judicial Code, and the petition claims- the taking of a part of the claimants’ land by the Government for public use and damage to the balance of the land without compensation being made therefor.
In each of said cases the motion is made to dismiss the same from this court under the provisions of section 5 of the act of March 4, 1915, which is hereafter set out. Said act is commonly known as the omnibus claims bill, and made appropriations for a large number of claims, which had, during the preceding 10 years, been reported upon by this court under references by one or the other of the Houses of Congress.
Section 1060, Revised, Statutes, taken frorti- the act of 1863, controlled congressional references to the Court of *296 Claims until the passage of the act of March 3, 1883, 22 Stat. L., 485, commonly known as the Bowman Act, entitled “An act to afford assistance and relief to Congress and the executive departments in the investigation of claims against the Government.” Section 1 of that act provided:
“ That whenever a claim or matter is pending before any committee of the Senate or House of Representatives, or before either House of Congress, which involves the investigation and determination of facts, the committee or House may cause the same, with the vouchers, papers, proofs, and documents pertaining thereto, to be transmitted tó the Court of Claims of the United States, and the same shall there be proceeded in under such rules as the court may adopt. When the facts shall have been found the court shall not enter judgment thereon, but shall report the same to the committee or to the House by which the same was transmitted for its consideration.”
By section 3, hereafter quoted, said act excluded certain claims from the court’s jurisdiction.
This act was followed by the Tucker Act, passed March 3, 1887, 24 Stat. L., 505, the fourteenth section of which provided :
“ Sec. 14. That whenever any bill, except for a pension, shall be pending in either Plouse of Congress providing for the payment of a claim against the United States, legal or equitable, or for a grant, gift, or bounty to any person, the House in which such bill is pending may refer the same to the Court of Claims, who shall proceed' with the same in accordance with the provisions of the act approved March 3, 1883, entitled ‘An act to afford assistance and relief to Congress and the executive departments in the investigation of claims and demands against the Government,’ and report to such House the facts in the case and the amount, where the same can be liquidated, including any facts bearing upon the question whether there has been delay or laches in presenting such claim or applying for such grant, gift, or bounty, and any facts bearing upon the question whether the bar of any statute of limitation should be removed, or which shall be claimed to excuse the claimant for not having resorted to any established legal remedy, together with such conclusions as shall be sufficient to inform Congress of the nature and character of the demand, either as a claim, legal or equitable, or as a gratuity, against the United States and the amount, if any, legally or equitably due from the United States to the claimant.”
*297 This section was amended by the act of June 25, 1910, 36 Stat. L., 837, to authorize certain conclusions by the court to be added to its findings of fact, the conclusions referring to the nature and character of the claimant’s demand and the amount, if any, legally or equitably due from the United States.
In construing said fourteenth' section of the. Tucker Act, this court held in 1891 in the case of Dowdy, 26 C. Cls., 220, that the Tucker Act was not amendatory of the Bowman Act; that the two acts were not to beconstrued in pari materia, and that the Tucker Act broadened the scope of references by either House of Congress.
The Court of Claims consistently adhered to its ruling in the Dowdy case and considered and made reports on claims which were referred by one House of Congress as being controlled by the act under which the reference appeared to have been made.
In the Brandon case, 46 C. Cls., 559, the court showed an inclination to question the construction which had been given as above stated, and the opinion there indicated that the two acts should have been construed in pari materia. But the Brandon case, involving as it did a claim for cotton taken prior to June 1, 1865, turned principally upon the view that as Congress had given jurisdiction to the court under section 162 of the Judicial Oode to hear and determine claims for cotton taken subsequent to June 1,1865, that section evinced a purpose on the part of Congress that this court should not have jurisdiction of claims for cotton taken prior to that time. The fourteenth section of the Tucker Act as amended by the act of June 25,1910, was carried into the Judicial Code as section 151 thereof with some more or less material changes.
In the late case of Montgomery et al., 49 C. Cls., 574 (decided June 1, 1914), we again had occasion to review the legislation of Congress relative to the jurisdiction of the Court of Claims in references thereto by one or the other of the Houses of Congress, and it was decided that the rule laid down in the Dowdy case and the cases following it would be adhered to. One of the reasons for this ruling was *298 that the court, having proceeded since 1891 (more than 20 years) under the construction given in the Dowdy case, and Congress having made appropriations for claims under that construction, it would disarrange all the proceedings in cases then pending if a departure were made from the line of action which the court had so long followed and which, impliedly at least, had been affirmed by Congress. In other words, it was assumed that the construction given to the Tucker Act in the Dowdy and other cases had met with the concurrence of Congress, inasmuch as it had acted upon claims which had been referred to the court and been reported by it, and especially since section 151 of the Judicial Code appeared to be substantially a reenactment of the fourteenth section of the Tucker Act, with some changes made necessary by the repeal of the Bowman Act.
In said case of Montgomery et al. the question presented required an examination of the statutes relative to the jurisdiction of this court, and it was pointed out and decided that the jurisdiction of the Court of Claims to hear and determine cases against the United States was different from the jurisdiction conferred in the matter of bills or claims referred by one House of Congress; that the jurisdiction conferred by section 145, whereby the court was authorized to hear and determine certain claims, is in no wise affected by section 151 (the fourteenth section of the Tucker Act) and does not control the latter jurisdiction; that the jurisdiction conferred by section 151 of the Judicial Code was intended merely as an aid to Congress, afforded through the machinery of this court, in ascertaining facts regarding particular claims which might be referred; that the action of the court upon the references of these matters was quasi judicial, but the field of operation of section 151 was entirely distinct from the jurisdiction to hear and- determine cases, and the one kind of jurisdiction was not dependent upon the other.
There can be no doubt that the “ jurisdiction ” meant by the Crawford amendment is that kind of jurisdiction which, at different times, had been conferred on the Court of Claims by section 151 of the Judicial Code, the fourteenth section *299 of the Tucker Act, or the Bowman Act. The bill’to which the amendment was made was dealing with claims which had been reported upon by this court and as to which the court had exercised the jurisdiction to investigate and report the facts. We may assume that the Congress recognized the difference, pointed out in the Montgomery case, between the two distinct jurisdictions with which this court was vested. The Crawford amendment, therefore, has no application to cases or controvérsies wherein the United States are defendants and wherein the court is authorized to hear and determine them. This jurisdiction to hear and determine is conferred by section 145 and section 162 and some other statute.
Construing the last clause in section 3 of the Bowman Act, it being repeated as the last clause in the Crawford amendment, the following cases, decided by the court while .considering the Bowman Act references, will show the court’s view.
In Ford's case, 19 C. Cls., 596, in an opinion by Judge Richardson, is found a history of the procedure of Congress and this court in cases which arose prior to the Bowman Act. ■
It was held in Dunbar’s case, 19 C. Cls;, 489, decided in 1884, that a claim barred by the statute of limitations was outside of the jurisdiction of this court under the concluding clause of section 3 of the Bowman Act.
In Ford's case, 19 C. Cls., 519, the court refers again to said clause in section 3 of the Bowman Act and remarks: “ This does not mean merely the provisions of any law of limitation, but of ‘ any law.’ Nor does it mean any express law barring the claim in direct prohibitory terms, but ‘ any law ’ which has the effect of barring it.” That was a case where the bill had been referred under the Bowman Act for cotton alleged to have been seized by military authority of the United States, and the court declined to take jurisdiction under the provisions of the Bowman Act and dismissed the petition.
In Dodd's case, 21 C. Cls., 117, it is pointed out that the act of 1871 creating the Southern Claims Commission, 16 Stat. Z., 524, provides that all claims described therein not *300 presented in time to the board shall “be barred and shall not be entertained by any Department of the Government without further authority of Congress,” and the court again followed the Ford case relative to the last clause of section 3 of the Bowman Act.
In Nefelhower’s case, 21 C. Cls., 228, will be found a list of the classes of cases which were excluded from the jurisdiction of the court by virtue of the Bowman Act.
In Vance’s case, 21 C. Cls., 448, it was held that in cases of congressional reference the court was without jurisdiction of claims for the proceeds of captured and abandoned prop- • erty. And to the same effect also is Nelson’s case, 22 C. Cls., 159, which involved a reference by the Committee on War Claims of the House of Representatives under the Bowman Act of a claim for cotton taken by military authority.
In Allen’s case, 27 C. Cls., 89, it was held that a claim which had been considered and rejected by the department having jurisdiction of it and which was barred by the statute of limitations was excluded from the jurisdiction of this court by the last clause of the third section of the Bowman Act.
White’s case, 28 C. Cls., 57, involved a Bowman Act reference wherein the claim was made for a steamboat turned over to the Quartermaster’s Department and for the use of the steamer, together with a large claim for sugar and molasses alleged to have been taken from the claimant. The court declined to take jurisdiction, and in its opinion by Peelle, judge, said (p. 59): “ If the property of a citizen, loyal or disloyal, in friendly or hostile territory during the war for the suppression of the rebellion, was destroyed by the Army and Navy of the United States, this court is' inhibited from taking jurisdiction under the third section of the act under which the claim was transmitted to the court.” And, further (p. 64) : “ If a claim is barred, the court is inhibited from exercising jurisdiction,” citing Balmer’s case, 26 C. Cls., 82.
For convenience of reference we set out the third section of the Bowman Act and the Crawford amendment in parallel *301 columns, italicizing tbe words in the latter which do not appear in the Bowman Act:
“Sec. 3. The jurisdiction of said court shall not extend to or include any claim against the United Sattes growing out of the destruction or damage to property by the Army or Navy during the war for the suppression of the rebellion, or for the use and occupation of real estate by any part of the military or naval forces of the United States in the operation of said forces during the said war at the seat of war; nor shall the said court have jurisdiction of any claim against the United States which is now barred by virtue of the provisions of any law of the United States.” Bowman Act, Mar. 3, 1883.
“ Sec. 5. That from and after the passage and approval of this act the jurisdiction of the Court of Claims shall not extend to or include any claim against the United States based upon or growing out of the destruction of any property or damage done to any property to the military or naval forces of the United States during the war for the suppression of the rebellion; nor to any claim for stores and supplies tahen by or furnished to or for the use of the military or naval forces of the United States, nor to any claim for the value of any use and occupation of any real estate by the military or naval forces of the United States during said war; nor shall said Court of. Claims have jurisdiction of any claim which is now barred by the provisions of any law of the United States.” Act of Mar. 4,1915.
We have, then, the law (section 151 of the Judicial Code) authorizing a reference by either House of Congress of a bill for the payment of a claim, legal or equitable, and by the Crawford amendment a limitation upon the jurisdiction of the court; and the question is, How far does that amendment affect the jurisdiction conferred by section 151 or the fourteenth section of the Tucker Act?
The Government insists that said amendment excludes from said jurisdiction not only classes of claims specifically mentioned and those barred by some law, but also any claim that is now barred by the statute of limitations applicable to suits in this court, and any claim which by the decisions of the *302 courts could not be enforced. The statute of limitations, section 156 of the Judicial Gode, provides:
“Every claim_against the United States cognizable by the Court of Claims shall be forever barred unless the petition setting forth a statement thereof is filed in the court or transmitted to it by the Secretary of the Senate or the Clerk of the House of Representatives, as provided by law, within six years after the claim first accrues.”
Under the references which have been made by either House of Congress under the Tucker Act the statute of limitations would have barred practically all of them if the court had been proceeding under its jurisdiction to hear and determine and render judgment thereon. One of the reasons for the fourteenth section of the Tucker Act and section 151 of the Judicial Gode was to enable Congress to have an investigation and determination of facts in claims which might be presented to Congress and which, because of the bar of the statute of limitations, could not be determined by the Court of Claims, the-statute of limitations being itself jurisdictional. The Crawford amendment occurs in the omnibus claims bill. The Congress was then dealing with claims which had been referred to this court and reported to one of the Houses, and nearly all of them could come within the category of “war claims,” meaning thereby claims arising out of occurrences during the Civil War. There may be cases which come under the general description of “ war claims ” which are not included in the provisions of said amendment, unless they be included in the last clause thereof. It is manifest that the Crawford amendment must be read in connection with section 151 of the Judicial Gode, which largely reenacts the fourteenth section of the Tucker Act. It is to be presumed that Congress was familiar with the construction which this court had given to section 151 of the Judicial Gode, Montgomery et al, 49 C. Cls., 574, and by the reports of its findings upon the many references which have been made to the court by one or the other of the Houses of Congress.
These considerations would tend to support a conclusion that the Crawford amendment had reference to war claims alone if its language were less positive or less clear and the *303 same language bad not received repeated construction at the hands of this court in the cases above mentioned and many others. It is a general rule that where the same terms are used in a subsequent statute which were used in a former statute, and as there used had received a judicial interpretation, they are to be understood in the same sense unless the intention to use them in the subsequent statute in a different sense clearly appears. Logan v. United States, 144 U. S., 263, 301; The Abbotsford, 98 U. S., 440-444. This rule is applicable to the words in the Crawford amendment which were taken from the Bowman Act, and as there used had been construed. In construing an acf it is the court’s duty to ascertain the intention of the law-making power, and-when that intention is discovered it must prevail. Where the statute is clear and unambiguous, there is no room for construction, and the language of the act must prevail.
It is well settled that where there are two acts upon the same subject the rule is to give effect to both if possible; but, if the two acts are repugnant in any of their provisions, the later act, without any repealing clause, operates to the extent of the repugnancy, as a repeal of the first. United States v. Tynen, 11 Wall., 88, 92; District of Columbia v. Hutton, 143 U. S., 18, 26. It will be noted that section 151 of .the Judicial Gode does not use the term “ jurisdiction,” but does grant to either House of Congress the authority to refer to the Court of Claims a bill providing for the payment of a claim, legal or equitable, against' the United States or for a gift, grant, or bounty, for the purpose mentioned in the law, and the court is authorized in the accomplishment of that purpose to proceed therein under such rules as it may adopt (the procedure in such claims is set out in an appendix to this opinion). The jurisdiction of the court in such references is, therefore, derived from the authority of the House or Senate to refer the fact of the reference as authorized and the right of the court to proceed therein. The taking away by statute of the authority to refer a bill or claim would necessarily operate as a repeal of said sem tion, and the withdrawal of the authority to refer or the court’s right to proceed in a particular glass of claims would *304 likewise repeal said section as to the designated class. The court could not, under that section, proceed, “under such rules as it may adopt,” to the investigation of claims which were not authorized-to be referred to the court. Instead of dealing directly with the authority of either House to refer a bill for a particular class or classes of claims, the Crawford amendment is directed at the jurisdiction of the court to perform the function, as to those claims, which said section 151 contemplates. Being repugnant to the general grant of authority in that section, the Crawford amendment repeals it to the extent of the repugnancy and “ by the repeal the legislative will is expressed that no further proceedings be had under the act repealed.” Tynenls case, 11 Wall., 88, 95; Noms v. Crocher, 13 How., 429. From and after the enactment of the Crawford amendment the court’s right to proceed in the exercise of its jurisdiction under such rules as it may adopt in the matter of congressional references is to be found, not in the general terms of section 151 of the Judicial Code or the fourteenth section of the Tucker Act as it existed before the Crawford amendment, but as it exists when a part of the law has been repealed or a part of the jurisdiction has been withdrawn. The specific claims contemplated by the Crawford amendment qualify and form exceptions to the general claims contemplated by the prior enactment. Townsend v. Little, 109 U. S., 504, 512.
In the case of United States v. Goldenberg, T68 U. S., 95, 103, Mr. Justice Brewer said:
“ The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in-the language that he has used. He is presumed to know the meaning of words and the rules of grammar. The courts have no function of legislation, and simply seek to ascertain the will of the legislator. It is true there are cases in which the letter of the statute is not deemed controlling, but the cases are few and exceptional, and only arise when there are cogent reasons for believing that the letter does not fully and accurately disclose the intent. No mere omission, no mere failure to provide for contingencies, which it may seem wise to have specifically provided for, justify any judicial addition to the language of the statute.”
*305 In Hadden v. Barney, 5 Wall., 107-111, quoted by Mr. Justice Harlan in Bate Refrig. Co. v. Sulzberger, 157 U. S., 37, it is said by Mr. Justice Field:
“Wbat is termed the policy oí the Government with reference to any particular legislation, is generally a very uncertain thing, upon which all sorts of opinions, each variant from the other, may be formed by different persons. It is a ground much too unstable upon which to rest the judgment of the court in the interpretation of statutes.”
In Scott v. Reid, 10 Pet., 524, 527, it is said that—
“ Where the language of the act is explicit, there is great danger in departing from the words used, to give an' effect to the law which may be supposed to have been designed by the legislature. * * * It is not for the court to say, where the language of the statute is clear, that it shall be so construed as to embrace cases, because no good reason can be assigned why they were excluded from its provisions.”
Applying the principle announced in these cases, we conclude that the Crawford amendment excludes from the court’s jurisdiction to investigate and determine the facts claims barred by the statute of limitations applicable to suits in this court, as well as the other classes of claims mentioned in said amendment and contemplated by it. But the bar which the statute of limitations of six years interposes is applicable only to claims of which, or of the subject matter of which, the Court of Claims has cognizance; and if either House of Congress refer a claim of which or of the subject matter of which this court has not, or never had, cognizance or jurisdiction, the statute of limitations alone would not prevent its consideration for the purpose of an investigation and report of the facts.
The question most earnestly urged for the claimants in these motions is that the Crawford amendment is not applicable to claims which have been heretofore referred and are now pending in this court. This contention is based upon the theory that the Crawford amendment must have a prospective operation and be applied to claims referred after the act of March 4, 1915, went into effect. The cases cited to sustain that contention, viz, Twenty Per Cent cases, 20 Wall., 179; Chew Heong case, 112 U. S., 536; White's case, 191 U. S., 545; TJ. S. Fidelity Go. v. Strothers, 209 TJ. S., 306; *306 United States v. American Sugar Co., 202 U. S., 563, and some others were all considering questions which involved or had reference to contract rights or rights of action or vested rights, and were not dealing with questions of jurisdiction.
It can not, of course, be maintained that any vested right, or contract right, or legal cause of action, is involved in the references by one House of the Congress for an investigation and report of facts to such House. The reference is, primarily, for the information and benefit of Congress, one House adopting the medium of a court instead of a committee from its own body, to the end that the facts as to the claim, when the Congress comes to act upon it, may have had a judicial investigation and determination. It is a matter of grace to refer them as it is for the Congress to determine whether the claims, when the court makes its report thereon, shall be paid. If the claim referred be within the court’s jurisdiction to hear and determine it the statute provides that the court shall proceed to judgment. The claims usually referred are not of this nature.
The references being made for the purposes stated, it is manifest that the entire matter remains in fieri until the Congress acts.
In Corbetts case, 1 C. Cls., 139, an action had been brought in the court’s general jurisdiction prior to the act of July 4, 1864, restricting the jurisdiction of the Court of Claims. The question presented was whether the said act concluded the court from retaining jurisdiction of an action properly commenced before the act was passed. That act provided that “the jurisdiction of the Court of Claims shall not extend to or include any claim against the United States ” of the kinds mentioned, from the commencement to the close of the war. Its language was therefore broad enough to cover pending suits, but the court’s views are appropriate here: “This court was created by act of Congress, and it may be abolished by it, and if Congress may annul its jurisdiction it may restrict it.” Replying to the contention that the act should not be given a retrospective effect, it was said:
“ But such construction only gives force to the act from the time when by the general provision of law it went into *307 effect; that is, at and from the date of its passage. And if previous proceedings in cases then pending are thereby rendered of no avail it is because those proceedings were incomplete and inefficient without further proceedings here which the operation of the statute, from its date, prevents.”
The Corbett case, because of the language of the act of 1864, is not decisive of the present question, upon pending cases, but the following language from the opinion so clearly draws the distinction which is to be observed in this case between the effect of an act upon rights of parties and its effect upon the jurisdiction of the court, that we adopt it:
“ Moreover, we do not think the statute, as we construe it, has the effect imputed to it, because all the statute acts upon is the jurisdiction of this court, and the jurisdiction of a court can never involve the obligation of a contract, or any vested right; for a court only administers the legal remedy for these; and a statute abolishing, restricting, or enlarging the jurisdiction of a court acts on nothing but the remedy, and in that there can be no vested right, and therefore the rule as to the jurisdiction of a court is unqualified in the textbooks. Thus, Mr. Sedgewick, speaking of the repeal of statutes, says: ‘So if a statute confers jurisdiction in civil cases, and though suits may be instituted and pending at the time of the repeal, the jurisdiction is gone, and with it the whole proceeding falls to the ground.’ Sedgewick on Oon. and Stat. Law. A repealing statute, like every other, takes effect from its passage. Judicial construction, and the Constitution of the United States restricting the legislation of the States, have made cases of vested rights and contracts exceptions to the rule; but the reasons of these exceptions are not applicable to statutes annulling or restricting the jurisdiction of courts.”
The distinction thus pointed out not only finds support in the authorities generally, but can be illustrated by decisions of the Supreme Court. For instance, in &'team Go. v. Jolliffe, 2 Wall., 450, 457, it is said that when a right has arisen upon a contract, or a transaction in the nature of a contract authorized by statute, and has been so far perfected that nothing remains to be done by the party asserting it, the repeal of the statute does not affect it or an action for its enforcement. “ It has become a vested right which stands independent of the statute.” And this principle is recognized in the cases relied upon by the claimants. But *308 when the Supreme Court is considering the effect of a repeal upon the jurisdiction of the court, it says, in Insurance Co. v. Ritchie, 5 Wall., 541, 544: “It is clear that when the jurisdiction of a cause depends upon a statute the repeal of the statute takes away the jurisdiction. And it is equally clear that where a jurisdiction conferred by statute is prohibited by a subsequent statute the prohibition is so far a repeal of the statute conferring the jurisdiction.”
And in Ex parte MeArdle, 7 Wall., 506, 514, declaring that the effect of repealing acts upon suits under acts repealed had been determined by the adjudications of that court, citing Norris v. Crocker, 13 How., 429, and Insurance Co. v. Ritchie, supra, it was said: “Without jurisdiction, the court can not proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist the only function remaining to the court is that of announcing the fact and dismissing the cause. And this is not less clear upon authority than upon principle.” Other decisions of the Supreme Court are mentioned below.
Generally speaking, it may be conceded that vested rights and the obligation of contracts can not in this country be destroyed by the legislative action, whether in the enactment or the repeal of statutes. But the rule is that no person has a vested right in a particular remedy, and by the repeal of a statute the particular remedy authorized by it may be altogether withdrawn. Corbett's case, 1 C. Cls., 139; Musgrove v. Railroad, 50 Miss., 677; Cooley, Con. Lim., 4th ed., 476. “ The bringing of suits vests in a party no right to a particular decision, and his case must be determined on the law as it stands, not when the suit was brought, but when the judgment is 'rendered.” United States v. Heinszen, 206 U. S., 370, 387.
The authorities hold that a repeal of a statute conferring jurisdiction ends the light of a court to exercise it in cases subsequently coming before the court, though they may have been pending at the time the jurisdiction is withdrawn.
Thus in Hunt v. Jennings, 5 Blackf. (Ind.), 195, it was held that whenever a statute from which a court derives its jurisdiction in particular cases is repealed the court can not *309 proceed under the repealed statute even in suits pending at the time of the repeal unless they are saved by a clause in. the repealing statute. And in Wade v. St. Mary's Industrial School, 43 Md., 178, 181, it is said to be a settled doctrine that courts in deciding questions arising before them will look to the law as it is at the time, and will not be governed by what it may have been unless proceedings under a prior existing law had been completed or rights had become vested; and in Remington v. Smith, 1 Colo., 53, it was held that an amendatory act having taken away certain jurisdiction from the court it was without authority to proceed in a pending case. To the same effect is Gilliland v. Schuyler, 9 Kans., 569; Todd v. Landry, 5 Martin (La.), 459; State v. Daley, 29 Conn., 273; Tivey v. People, 8 Mich., 128; McMinn v. Bliss, 31 Cal., 122; Hartung v. People, 22 N. Y., 95.
In Fairchild's case, 91 Fed., 297, it was held that the act of 1898 amending the Tucker Act by excluding the jurisdiction of the Circuit and District Courts of claims against the Government by officers for a recovery of fees operated upon pending cases and deprived said courts of jurisdiction to proceed therein.
The question is, however, well settled by decisions of the Supreme Court.
In Railroad Company v. Grant, 98 U. S., 398, 401, the rule is thus stated by Mr..Chief Justice Waite: “It is well settled that if a law conferring jurisdiction is repealed without any reservation as to pending cases all such cases fall with the law.” The court was there considering the effect of an act of Congress which took away from the Supreme Court a jurisdiction conferred by a former statute relative to appeals from the Supreme Court of the District of Columbia, and held that the jurisdiction had been taken away, and that the Supreme Court had no authority to reexamine, reverse, or affirm the judgment in the case appealed. This rule is sustained by a long list of decisions and has been applied in a variety of cases by the Supreme Court. For instance, in the admiralty case of Yeaton et al., 5 Cranch, 281, it was held, Chief Justice Marshall delivering the opinion: “If the *310 law under which the sentence of condemnation was pronounced be repealed after sentence in the court below, and before final sentence in the appellate court, no sentence of condemnation can be pronounced unless some special provision be made for that purpose by statute.”
In McNulty v. Batty, 10 How., 72, certain pending cases were held to have fallen by reason of an amendment which took away the jurisdiction without providing for them.
In Insurance Co. v. Ritchie, 5 Wall., 541, 544, which involved the jurisdiction of the Circuit Courts of the United States in certain internal-revenue cases, it was held that the jurisdiction was taken away by a subsequent act, and that suits originally brought in the circuit courts and pending at the passage of the later act fell. The Chief Justice, delivering the opinion, said: “ It is clear that when the jurisdiction of a cause depends upon a statute, the repeal of the statute takes away the jurisdiction. And it is equally clear that where a jurisdiction conferred by statute is prohibited by a subsequent statute, the prohibition is, so far, a repeal of the statute conferring the jurisdiction.” The court added: “ It is quite possible that this effect of the act of 1866 was not contemplated by Congress. . * * * It is certainly
difficult to perceive a reason for discrimination between such suits, and suits under the internal-revenue laws; but when terms are unambiguous, we may not speculate on probabilities of intention.”
In Gwin v. United States, 184 U. S., 669, 674, it was said: “Even if the Court of Appeals act does not apply to this case, the jurisdiction of this court was clearly taken away by the act of 1864, and transferred to the Circuit Court of the United States for California, except as to appeals which had already been taken. If there had been no reservation of pending cases, even such cases would have fallen with the law.”
In Norris v. Crocker, 13 How., 429, the court considered the question of whether a certain act being repealed would bar an action that was pending at the time of the repeal, and held that it did.
In Assessor v. Osborne, 9 Wall., 567, 575, it was said that the circuit courts are courts of special jurisdiction and, there *311 fore, can not take jurisdiction of any case, either civil or criminal, where they are not authorized to do so by an act of Congress, and it was accordingly held: “ Jurisdiction in such cases was conferred by an act of Congress, and when that act of Congress was repealed the power to exercise such jurisdiction was withdrawn, and inasmuch as the repealing act contained no saving clause, all pending actions fell, as the jurisdiction depended entirely upon the act of Congress.”
Sherman v. Grinnell, 128 U. S., 679, follows the same view and adopts the language of Railroad Go. v. Grant, sufra. To the same effect is Gurnee v. Patrick County, 137 U. S., 141, 144.
We fully recognize the rule stated in the cases cited by claimants that the presumption should be indulged in that statutes are designed to have a prospective and not a retrospective operation, U. 8. Fidelity Co. v. Strothers, 209 U. S., 306, and we appreciate the force of the contention that where the language used employs the future tense this sometimes furnishes an additional reason for limiting the act. United States v. Sugar Co., 202 U. S., 562, 578. But, as we have said, the intention as clearly expressed in the Crawford amendment must control our action. The Congress declared that from and after March 4,1915, this court’s jurisdiction “ shall not extend to or include ” certain claims. That enactment is operative now, and what are called “pending cases” have not yet been disposed of by the court. It can be said, however, that if it was the intention of Congress to end proceedings in this court upon the claims already referred, as we think it was, it is difficult to see how they could have used more apt language to express that intention than is used in the Crawford amendment. The statute is dealing with the exercise of jurisdiction and not with the abstract idea of jurisdiction and is effective and operative as and when the matters reach the court for adjudication. When the court’s action is invoked in these references we find the Crawford amendment in emphatic terms declaring that we have not jurisdiction of them. Have we any right to say we will proceed to adjudicate them under the law as it was, though recognizing that we have no jurisdiction under the law as it is? When we try to find the intention of the Congress out *312 side of the plain terms of the enactment and to apply it as the claimants here contend it should be applied we are confronted not only with the obstacle that the Congress did not see fit to except pending references, but with the reasonable supposition that if the Congress had meant to continue the court’s jurisdiction in said references it would hare directed the amendment at the right of either House to thereafter refer any of said claims instead of addressing the inhibition to the jurisdiction of the court. Manifestly, if the Crawford amendment had provided that from and after March 4, 1915, neither House of the Congress should refer any of such claims to the Court of Claims a clearer case as to pending references would have been made, because in that event the statute would not necessarily have applied to those claims already referred; but they took away the court’s right to exercise jurisdiction, and being thus deprived of authority to act its further proceedings in the said references would be coram non judice and a nullity.
In view of the said authoritative decisions above mentioned we must hold that the Crawford amendment deprives the Court of Claims of jurisdiction of the classes of claims mentioned or referred to therein and contemplated thereby, including any of such claims as are now pending in this court, the said amendment containing no exception or reservation of pending claims. The Congress conferred the jurisdiction and has taken it away in language too plain to be misunderstood — “ the jurisdiction of the Court of Claims shall not extend to or include ” certain claims. The jurisdiction of the court in references by either House of Congress is found in section 151 of the Judicial Code, which, as has been said, is largely a reenactment of the fourteenth section of the Tucker Act of 1887. The Crawford amendment, relating, as it does, to that jurisdiction, must be considered in connection with said section, and its effect upon section 151 necessarily is to withdraw part of the jurisdiction which had been conferred by that section. The late enactment repeals fro tanto the provisions of section 151 of the Judical Gode (the fourteenth section of the Tucker Act), so far as the jurisdiction of the court is concerned, Insurance Co. v. Ritchie, 5 Wall., 544, *313 leaving that section operative as to claims not within the purview of the Crawford amendment.
In the Heffelbower case, 21 C. Cls., 228, 239, it was held, in an opinion by Judge Nott, that the Court of Claims is prohibited from exercising jurisdiction of cases transmitted under the Bowman Act in the following instances:
1. Of cases within the general or special jurisdictions of this court which were prosecuted to judgment and determined upon the merits. Revised Statutes, secs. 1092,1093.
2. Of cases within the general jurisdiction of the court which, if now prosecuted therein, would be barred by the statute of limitations. Revised Statutes, sec. 1069.
3. Of cases which might have been prosecuted under the abandoned or captured property act, but which the claimant neglected to prosecute while the jurisdictional period for bringing such suits continued. Ford's ease, 19 C. Cls. R., 519.
4. Of cases for military stores and supplies which might have been presented to the Southern Claims Commission, but which are barred by the statutes creating or continuing that tribunal, 17 Stat. L., p. 577, sec. 2; 19 Id., p. 404; 20 Id., p. 550, sec. 5, or which might have been presented to the Quartermaster and Commissary Generals under the Act fill July, 1864, 13 Stat. L., p. 381, but which are barred by the Act 3d March, 1879, 20 Stat. L., p. 628, sec. 3; Dodd's case, present term.
Judge Nott instances three other classes which, however, may be summarized in the language of the Crawford amendment.
It is significant that when the court had reviewed the statutes conferring jurisdiction in certain congressional references and had given a broad construction to section 151 of the Judicial Code, as in the Montgomery case, that decision at the next session of Congress should be followed by a statute affecting said jurisdiction, couched in the positive and clear language of the Crawford amendment. It is not for us to question the right and the purpose of the Congress, and we must not ignore the plain meaning of enactment.
Whether the clause in the first section of the omnibus claims bill, “that claimants under this act receiving com *314 pensation for use and occupancy of property shall not be barred from further prosecution of claims arising from damage or destruction of the same property ” had any reference to the jurisdiction mentioned in section 5, the Crawford amendment, or is intended, as its context may imply, that the receipt of the amount appropriated by the act shall not be used as a plea of payment could be in the event the claimant seeks claim for damage or destruction of the same property in some forum authorized by Congress to act, we deem it unnecessary to express an opinion at this time, as none of such cases is now before us.
Our conclusion is that the motions in the said Chase and Lippman cases must be sustained; and that the motion in the Walker and Smith case must also be sustained notwithstanding the claim in the last-mentioned case is for an alleged injury occurring in 1899 for which an action could have been brought in this court but is now barred.
Booth, Judge, Barney, Judge, and Atkinson, Judge, concur.
APPENDIX.
It may not be amiss to review briefly the general method of procedure in the Court of Claims in the matters of bills referred under said acts.
Originally a bill was referred by separate resolution of the House or Senate, but more lately a resolution of the House or Senate including a large number of bills for different claims was passed and transmitted with the bills to this court. Upon its reaching the court the clerk enters upon the docket of the court each claim, evidenced usually by a mere bill, in the name of the claimant under its serial number. The law provides that the court shall proceed with said references “under such rules as it may adopt.” Its rules provide for the docketing of the claim, as stated, and that when the evidence is taken both parties shall brief the case and submit it to the court. The evidence must be taken by deposition and usually in the county of the claimant’s residence. The claimant is represented by himself or by counsel of his selection and the Government is represented *315 by its Attorney General or an attorney in the Department of Justice. When the claimant’s attorney wishes to take testimony, he notifies the Department of Justice and an arrangement mutually satisfactory is made as to the time and place of taking it. Located as the claims are in widely separated sections of the country distant from Washington, the difficulty of securing the testimony in many cases except at considerable expense and much delay is apparent. The rules of the court, drawn in a spirit of liberality, allow the claimant two years to take steps in his claim before the court will entertain a motion to dismiss it for want of prosecution, and if he or his attorney shows that any progress has been made, however small, within the two years next preceding a motion to dismiss, he is given further time. Except for the motions to dismiss under its rules, the court has no way by which it can dispose of the cases until they have been prepared and submitted to it.
The court has no examiners to take testimony, and is therefore dependent upon the parties. The necessary result has been that references have stood upon the docket in some cases for years and the court has been powerless to expedite a hearing without dismissing the case, which frequently would work an injustice where expense has been incurred toward getting testimony. A large percentage of the cases dismissed for want of prosecution are subsequently referred again to the court by a subsequent resolution of the House or Senate. What may be denominated as “ war claims,” being claims for the destruction of or for the use and occupation of property, or the taking of property, or for stores and supplies during the Civil War, constitute much the larger part of all references by either House of Congress to the Court of Claims, and notwithstanding the long lapse of túne and the consequent difficulty of securing proof it appears that the number of such references has increased. The docket of this court shows that while the number of references which came from Congress during the five years commencing with 1891, four years after the enactment of the Tucker Act, was about 2,700; the number during the five years prior to 1915 was about 8,200; and' of these over 3,600 *316 in 1912 and over 3,100 in 1914 were sent by both Houses. Evidence in many of these cases from lapse of time has become difficult to procure, and in many of them the court must deal with testimony that is unsatisfactory if not uncertain.