JOHN NORRIS, PLAINTIFF, *v.* EDWIN B. CROCKER AND ELISHA EGBERT.

The fourth section of the act of Congress, approved on the 12th day of February, 1793, (1 Stat. at Large, 302,) entitled "An act respecting fugitives escaping from justice, and persons escaping from the service of their masters," is repealed, so far as relates to the penalty, by the act of Congress approved September 18th, 1850, (9 Stat. at Large, 462,) entitled "An act to amend, and supplementary to, the above act."

Therefore, where an action for the recovery of the penalty prescribed in the act of 1793 was pending at the time of the repeal, such repeal is a bar to the action.

THIS case came up from the Circuit Court of the United States for the District of Indiana, upon a certificate of division in opinion between the judges thereof.

The following certificate explains the question:

UNITED STATES OF AMERICA,

*District of Indiana.*

At a Circuit Court of the United States, begun and holden at Indianapolis, for the District of Indiana, on Monday, the nineteenth day of May, in the year one thousand eight hundred and fifty-one, and continued from day to day until Friday, the thirtieth day of May, one thousand eight hundred and fifty-one.

JOHN NORRIS,
          v.
EDWIN B. CROCKER AND ELISHA EGBERT.

Present, honorable John McLean, and the honorable Elisha M. Huntington, judges.

This is an action of debt brought to recover the penalty of five hundred dollars, upon the fourth section of the act of Congress, approved February 12, 1793, entitled "An act respecting fugitives from justice, and persons escaping from the service of their masters;" declaration in the usual form, and demurrer and joinder thereto.

The case coming on to be argued on demurrer, it occurred as a question, whether the aforesaid section of the aforesaid act of February 12, 1793, is repealed, so far as relates to the penalty given by said section, by the act of Congress of September 18th, 1850, entitled "An act to amend and supplementary to the act entitled, 'An act respecting fugitives from justice, and persons escaping from the service of their masters,'" approved February 12th, 1793; and whether, if repealed, the same can affect this action, which was pending before the passage of the last-named act; on which questions the opinions of the judges were opposed.

Whereupon, on motion of the plaintiff, by his counsel, that the points on which the disagreements hath happened, may, during the term, be stated under the direction of the judges, and certified under the seal of the court to the Supreme Court to be finally decided.

It is ordered that the foregoing statement of the pleadings and the following questions involved, which are made under the direction of the judges, be certified according to the request of the plaintiff, by his counsel, and the law in that case made and provided, to wit:

I. Is the fourth section of the act of Congress, approved on the 12th day of February, A. D. 1793, entitled "An act respecting fugitives from justice, and persons escaping from the service of their masters," repealed, so far as relates to the penalty, by the act of Congress, approved September 18th, 1850, entitled "An act to amend, and supplementary to the act entitled 'An act respecting fugitives from justice, and persons escaping from the service of their masters,'" approved February 12th, 1793.

II. Whether, if the fourth section of the last-named act of February 12th, 1793, is repealed, so far as relates to the penalty by the act to amend and supplementary to the same, that repeal will, in law, bar the present action that was pending at the time of the repeal.

Upon this certificate, the cause came up to this court, and was argued by Mr. O. H. Smith, for the plaintiff, and Mr. Chase, for the defendants.

*Mr. Smith*, for the plaintiff.

On the part of the plaintiff, we contend that the act of 1850, does not repeal the fourth section of the act of 1793, but is only cumulative; and we ask this court so to certify to the Circuit Court.

The defendants maintain that the act of 1850 does repeal, by implication, the fourth section of the act of 1793, and every distinct offence created by that section; therefore, if the court should even think that part of the section is repealed by implication, which we submit they will not, still if the whole of the section is not repealed, the certificate must be for the plaintiff, and the demurrer in the Circuit Court must be overruled.

Before we proceed to examine the two acts, and to compare them, we will direct the attention of the court to some plain and familiar principles, for the construction of statutes, by which we are willing to construe these acts, as applicable to this case.

1. " Generally, statutes are to be construed to operate *in futuro*, unless a retrospective effect be clearly intended." Prince *v.* United States, 2 Gallis. C. C. R. 204.

2. " In doubtful cases, a court should compare all the parts of a statute, and different statutes in *pari materia*, to ascertain the intention of the legislature." Sloop Elizabeth, Paine's C. C. R. 11.

3. " Where a statute is made in addition to another statute on the same subject, without repealing any part of 'it, the provisions of both must be construed together." 13 Mass. 324, 344.

4. " Statutes can never be applied retrospectively, by mere construction." 9 B. A. 221; 10 Mass. 437; 12 Mass. 383; 16 Mass. 215; 1 Blackf. R. 220.

5. " Subsequent statutes, which add accumulative penalties, and institute new methods of proceeding, do not repeal former penalties and methods of proceeding, ordained by preceding statutes, without negative words." 6 Price, 131; 9 B. A. 227.

6. " The law does not favor a repeal by implication, nor is it to be allowed unless the repugnancy be quite plain; for as such repeal carries with it a reflection upon the wisdom of the former parliament, it has ever been confined to the repealing as little as possible of the preceding statute." 2 Wash. 297; 2 Barn. & Ald. 149; 6 Maule & Selwyn, 116; 15 East, 372; 9 B. A. 228.

7. " Although two acts of parliament are seemingly repugnant, yet if there be no clause of *non obstante* in the latter, they shall, if possible, have such construction that the latter may not

be a repeal of the former by implication." Weston's case, Dyer, 347; 11 Rep. 63; Hard. 344; 9 B. A. 228.

With these general and fundamental principles before us, we proceed to direct the mind of the court —

1st. To the section of the act of Congress upon which this action was brought, and

2d. To the section of the act of 1850, passed pending the action, which is relied upon as repealing the fourth section of the act of 1793.

1. The section of the act of 1793, upon which this action is founded, reads as follows:

"That any person who shall, knowingly and willingly, obstruct or hinder such claimant, his agent, or attorney, in so seizing or arresting such fugitive from labor, or shall rescue such fugitive from such claimant, his agent, or attorney, when so arrested, pursuant to the authority herein given or declared, or shall harbor or conceal such person, after notice that he or she was a fugitive from labor as aforesaid, shall for either of the said offences forfeit and pay the sum of five hundred dollars; which penalty may be recovered by and for the benefit of such claimant, by action of debt in any court proper to try the same," saving, &c.

This section, the court will see, gave several distinct causes of action for the penalty:

1. Against any person who should knowingly and willingly "obstruct" the claimant, his agent, or attorney, from "seizing or arresting the fugitive."

2. Against those who shall knowingly and willingly "hinder" the claimant, his agent, or attorney, in so "seizing or arresting the fugitive."

3. Any persons who shall knowingly and willingly "rescue" such fugitive from such claimant, his agent, or attorney, when so arrested, pursuant to the authority herein given or declared."

4. Against persons "who shall ' harbor' such fugitive" "after notice that he or she was a fugitive from labor."

5. Against persons "who shall conceal such person, after notice that he or she was a fugitive from labor."

The section of the act of 1850, that is relied upon as repealing the fourth section of the act of 1793, as to the penalty, by implication, we maintain is merely cumulative. We proceed to give the section; and in order to show the additions that have been made to the section of the act of 1793, by the act of 1850, we give the section, and place the additions in brackets.

"That any person who shall knowingly and willingly obstruct [or prevent] such claimant, his agent, or attorney, [or any person or persons lawfully assisting him, her, or them,] from arresting

such a fugitive from service or labor, [either with or without process as aforesaid,] or shall rescue [or attempt to rescue] such fugitive from service or labor from [the custody of] said claimant, his or her agent or attorney, [or other person or persons lawfully assisting as aforesaid,] when so arrested pursuant to the authority herein given and declared, [or shall aid, abet, or assist such person, so owing service or labor as aforesaid, directly or indirectly to escape from such claimant, his agent, or attorney, or other person or persons legally authorized as aforesaid,] or shall harbor or conceal such fugitive [so as to prevent the discovery and arresting of such person] after notice [or knowledge] of the fact that such person was a fugitive from service or labor as aforesaid."

It will be seen, by an examination of the above section, that it creates new offences, and punishes them differently, and is therefore cumulative.

The section above does not make "harboring" or "concealing" a slave subject to a penalty, unless it is done "so as to prevent the discovery and arresting of such person after notice," &c., while the section of the law of 1793, on which these actions are founded, makes the offence to "harbor or conceal such person, after notice that he or she was a fugitive from labor," subject to a penalty of $500. These offences are entirely different, and are visited with different penalties. The legislature (Congress) therefore did not repeal the offence of "harboring" or "concealing" slaves from their masters, either in express terms by implication. Both acts can well stand together, and the rule of law is to construe them as we have already stated.

Let us now come to the act of Congress of 1850, and inquire whether it could have been the intention of the framers of that act to repeal the act of 1793. We maintain the negative of this proposition, as being clear and conclusive.

1. Had such been the intention of the legislature, the act would have contained an express repealing clause, which it does not.

2. Congress was composed of good lawyers and wise legislators, who would never have left to construction and implication that which they intended to have enacted.

3. The object of the act of Congress of 1850, was evidently to give greater facilities to the master of the slave, in securing the fugitive; and can it be for a moment supposed that Congress intended to repeal the act of 1793, wipe out all liabilities incurred under that act, and deprive the master of the rights that had accrued to him, of action in suits pending, or otherwise? Most certainly not.

4. It is clear that the act of 1850 cannot, under any construc-

tion, have a retrospective operation, and therefore could in no event operate on the rights of the plaintiff which had accrued before the passage of the act, unless it was by way of repeal of the previous act by implication.

5. The title of the act is conclusive as to the object and intention of the legislature in its passage. It was, as it expressly declares, amendatory to, and supplementary of, the act of 1793. Not a repeal of the act, but amendatory and supplementary to that act; " additional," " adding what is wanting." See Webster's Dictionary as to the words " supplementary " and " to amend.".

6. The act of 1850, in the language of Judge Nelson, in his able charge to the grand jury, " was passed for the purpose of carrying more effectually into execution a provision of the Constitution of the United States." " The supplementary act is obviously framed with great skill and care, and bears upon its face the deep conviction of the body that enacted it that the constitutional provisions had not only been disregarded, but that a settled purpose, a fixed determination existed in some portions of the country to set its obligations at naught. The act meets this condition of things, real or supposed, and clothed the public authorities with power adequate to the exigency." This view of the object and effect of the act is certainly very erroneous if the act was a repeal of the penal part of the act of 1793, as is contended. If it enacted impunity and absolution to all offenders under the act of 1793, dismissed all actions pending for violations of its provisions with costs, and, being retroactive in its operation, left no cause of action for any penalty incurred prior to its passage, though not within the offences named by the act of 1850, we submit that this court should not give to the act of 1850 such a construction, but should construe it to be what its title declares it to be, — an act to amend, and supplementary to, the act of 1793. This construction will accord with the object and intention of the legislature, will enforce the rights of the plaintiff, and maintain the majesty of the laws and the integrity of the Union.

*Mr. Chase*, for defendant, contrasted the two laws, and then proceeded with his argument.

It was evident, from this comparison, that the design of the act of 1850 was to enlarge the act of 1793 and make it more efficient and stringent, by extending the definitions of the prohibited offences, and by substituting for the penalty of five hundred dollars for the benefit of the claimant, the public punishment of a fine of one thousand dollars and imprisonment, and for mere liability to an action for the injury, the definite award

of one thousand dollars as civil damages for each servant lost. No offence is described in the act of 1793 which is not expressly mentioned and prohibited in the act of 1850; while the penalties and sanctions of the latter act are entirely distinct, both in nature and magnitude, from those of the former.

The rules of law applicable to this law are, I apprehend, too well settled to admit of much diversity of opinion. The first is this:

Acts of the legislature prohibiting the same offences and injuries as former acts, but imposing different penalties or giving different remedies, repeal, so far, such former acts. Rex v. Cator, 4 Burr. 2026; Nichols qui tam v. Squire, 5 Pick. 168; Commonwealth v. Kimball, 21 Pick. 373; Adams v. Ashby, 2 Bibb. 96; 2 Dana, 330; Hickman v. Littlepage, 2 Ib. 334; Milne v. Huber, 3 McLean, 212; The State v. Whitworth, 8 Porter, (Ala.) 434; McQuilkin v. Doe ex dem. Stoddard, 8 Black. 581; Leighton v. Walker, 9 N. H. 59.

The leading case is Rex v. Cator, 4 Burr. 2026. The defendant had been convicted upon 5 Geo. 1, c. 27 and 23 Geo. 2, c. 13, for enticing and seducing artificers in the manufactures of the United Kingdom into foreign service. Both acts were upon the same subject. The offence was within each. The first imposed a penalty of £100 and three months' imprisonment for the first offence, and for the next a fine at discretion and twelve months' imprisonment. The second act imposed a penalty of £500 and twelve months' imprisonment for the first offence; and for the next £1000 and two years' imprisonment. Lord Mansfield held, " The latter act seems to have been a repeal of the former: it was made to supply the deficiencies of the former."

The language of the Supreme Court of Massachusetts, in Nichols qui tam v. Squire, 5 Pick. 168, is very clear: " We think the statute of 1785, c. 24, upon which the *qui tam* action is founded, is repealed, if not by Stat. 1800, c. 57, (which seems to have had a different object in view,) yet certainly by Stat. 1817, c. 191, which appears to cover the whole subject-matter of the statute of 1785. By the statute of 1817 the selling of tickets in any lottery not granted or permitted by the Commonwealth is prohibited under a new penalty; and where the legislature impose a second penalty for an offence, whether smaller or larger than the former one, a party cannot be allowed to sue on one or the other, at his option. This point of repeal by implication is supported by authority. In the case of Bartlett v. King, (12 Mass. 537,) an exceedingly useful statute, passed in 1754, concerning bequests and donations to pious and charitable uses, was held not to be in force, the legislature having in 1785

legislated upon the same subject, and omitted to reënact the provisions of that statute."

The opinion of the Supreme Court of Alabama, in The State *v.* Whitworth, (8 Porter's Ala. Rep. 434,) is equally decided: " The act of 1829, inhibiting gaming, covers the whole ground of the previous statute; so far as the keeping, exhibiting, carrying on, or being in any manner interested in, any gaming-table or bank whatever is concerned, and includes every offence connected with the subject-matter; and as it provides a different, and in some respects a milder, punishment for these offences than the previous statutes, it repeals them so far as the same offences are provided to be punished by it."

It seems needless to quote from the other cases cited. These authorities are sufficient to establish the proposition, that the act of 1850, so far as it imposes new and different penalties and punishments for the same offences prohibited by the act of 1793, repeals that act.

The second rule of law laid down by the defendants is this:

No judgment can be rendered in any suit for a penalty after the repeal of the act by which it was imposed. The repeal of a statute puts an end to all suits founded upon it. Rex *v.* Justices of the Peace for the City of London, 3 Burr. 1456; Yeaton *v.* The United States, 5 Cranch, 281; Schooner Rachel *v.* The United States, 6 Cranch, 329; The Irresistible, 7 Wheat. 551; The United States *v.* Preston, 3 Peters, 57; Commonwealth *v.* Marshall, 11 Pick. 350; Commonwealth *v.* Kimball, 21 Pick. 373; Commonwealth *v.* Leftwich, 5 Rand. 657; People *v.* Livingston, 6 Wend. 526; Commonwealth *v.* Welch, 2 Dana,' 330; Lewis *v.* Foster, 1 N. H. Rep. 61; Stevenson *v.* Doe, 8 Black. 508; Pope *v.* Lewis, 4 Ala. 487; Road in Hatfield Township, 4 Yeates, 392; Maryland *v.* Baltimore and Ohio Railroad Company, 3 How. U. S. Rep. 534; 18 Maine Rep. 109; 25 Maine, 452; Miller's case, 1 Wm. Black. 451.

The leading case is Rex *v.* Justices of London, 3 Burr. 1456. It was a motion for a *mandamus* requiring the justices to proceed in a matter depending before them after the act regulating the proceeding had been repealed. The matter had been by them adjourned unto a day after the repealing clause took effect, and they then refused to proceed further. "Lord Mansfield was very clear, and the rest of the court concurred with him, that no jurisdiction now remained in the Sessions."

In the case of Yeaton *v.* The United States, 5 Cranch, 281, this court said, upon appeal from a sentence of condemnation, where the law under which the sentence had been pronounced had been repealed after the sentence, " The cause is to be considered as if no sentence had been pronounced; and if no sen-

tence had been pronounced, it has been long settled, on general principles, that after the expiration or repeal of a law no penalty can be enforced or punishment inflicted for violations of the law, committed while it was in force, unless some special provision be made for that purpose by statute."

And it makes no difference whether the penalty goes to the public, or in part or in whole to an individual.

In Lewis *v.* Foster, (1 N. H. 61,) a judgment had been rendered in an action of debt for a penalty under a statute which gave the whole penalty to the plaintiff. Before execution the statute was repealed. The defendant, by a proceeding in review, brought the case before the Supreme Court, where it stood as if no judgment had been rendered. The court said: "The plaintiff's right of action was taken away by the repeal of the law on which it was founded. Every right he acquired by a judgment was subject to be lost on review of the cause. We must try the cause in the same manner as if there never had been a judgment, but we now find no act which will warrant a judgment in favor of the plaintiff."

So in Pope *v.* Lewis, (4 Ala. Rep. 489,) the court said: "The principal question in this cause is whether any judgment can be rendered in an action founded on a penal statute after its repeal. The counsel for the defendant in error maintain, that by the commencement of the suit for the penalty prescribed by the statute for selling rope and bagging without inspection, the defendant acquired a vested right in the penalty, which the subsequent repeal of the statute by the legislature cannot deprive him of. The foundation of a claim to a penalty prescribed by law is derived entirely from the statute authorizing a judgment to be rendered in favor of any one who will sue for it." "This claim is imperfect until a judgment be rendered for it. . . . . . It follows, necessarily, that as the right to the penalty is inchoate until judgment, if from any cause no judgment can be rendered for the penalty, the absolute or vested right to it can never exist. It cannot admit of doubt that the legislature may at pleasure repeal any penal law; and it is equally well settled that after such repeal no judgment can be rendered, either of corporal punishment or pecuniary fine. Nor is it easy to perceive how, upon principle, any other decision could be made."

The whole matter is summed up in an expression of Mr. Chief Justice Taney, in Maryland *v.* The Baltimore and Ohio Railroad Company, (3 How. 534): "The repeal of the law imposing a penalty is itself a remission."

These principles and authorities seem to leave no doubt upon either question certified from the Circuit Court. It appears to be quite clear, both that the provisions of the 4th section of the

37 *

act of 1793, giving a penalty for the offences therein described, are repealed by the operation of the 7th section of the act of 1850, giving different penalties for the same offences; and that this repeal bars actions for penalties pending at the taking effect of the last act.

Mr. Justice CATRON delivered the opinion of the court.

The following questions are certified to us on a division of opinion from the Circuit Court for the District of Indiana.

1. Whether the 4th section of the act of 1793, respecting persons escaping from service of their masters is repealed, so far as relates to the penalty, by the act of 1850, on the same subject.

2. Whether, if the act of 1793 is repealed as to the penalty, the repeal will bar an action that was pending at the time of the repeal.

The fugitive slave law of 1850 does not repeal the 4th section of the act of 1793 in terms; and if it is repealed, it must be by implication. As a general rule it is not open to controversy, that where a new statute covers the whole subject-matter of an old one, adds offences, and prescribes different penalties for those enumerated in the old law, that then the former statute is repealed by implication; as the provisions of both cannot stand together.

To ascertain whether there be repugnance, the two enactments must be compared.

The 4th section of the act of 1793 provides: 1st. That any person who shall, knowingly and willingly, obstruct or hinder a claimant, his agent or attorney, in arresting a fugitive from labor:

Or, 2d. Shall rescue the fugitive from the claimant, his agent or attorney, after he has been arrested:

Or, 3d. Shall, knowingly and willingly, harbor, or conceal the fugitive, knowing he is such: That for committing either of said offences such person shall forfeit and pay the sum of five hundred dollars: which penalty may be recovered by the claimant for his own benefit; and reserving also to the claimant his right of action in damages for the actual injuries he may have sustained, be they more or less.

The act of 1850, section 7, declares:

1st. That any person who shall, knowingly and willingly, obstruct, hinder or prevent, such claimant, his agent or attorney — *or any person, or persons, lawfully assisting him, her or them,* from arresting such fugitive — *either with or without process:*

Or, 2d. Shall rescue, *or attempt to rescue,* such fugitive, when arrested, from the custody of the claimant, his agent or attorney,

*or from the custody of any other person, or persons, lawfully
assisting:*

Or, 3d. Shall *aid, abet,* or asist the person owing service, directly, or indirectly, to escape from such claimant, his agent or attorney, *or other person or persons legally assisting:*

Or, 4th. Shall harbor or conceal such fugitive, *so as to prevent his discovery and arrest,* after notice or knowledge of the fact, that such person was a fugitive: The person so offending, in either of the cases specified, shall be subject to a fine not exceeding one thousand dollars, and imprisonment not exceeding six months, on conviction by indictment. Secondly, That the person thus offending, shall forfeit and pay, by way of civil damages, to the party injured by such illegal conduct, the sum of one thousand dollars for each fugitive lost, by reason of such conduct, to be recovered by action of debt.

And the question is, whether the foregoing provisions of the act of 1850 are repugnant to those contained in the act of 1793, so far as the penalty of five hundred dollars is concerned.

The former statute gives this penalty to the owner in three cases: for obstructing an arrest; for a rescue; and for harboring the fugitive. It was given, regardless of the fact, whether the owner had or had not recovered his slave; and in addition, by the act of 1793 he might sue for, and recover, the value, if the slave was lost by the illegal conduct of the defendant; or he might recover inferior damages, if the slave was obtained.

By the act of 1850, a penalty is inflicted, by way of fine, on conviction; and imprisonment is added. The prosecution is at the instance of the United States, with which the owner of the slave is not necessarily connected, the government taking the penalty recovered: nor is it of any consequence, under this mode of proceeding, whether the owner has or has not recovered his slave; the offender being equally liable to prosecution for committing any one of the offences enumerated in the statute, including the old ones, found in the act of 1793, and the additional ones, superadded in that of 1850, and which are indicated by the words in italics. The recent statute covers every offence found in the former act, which subjects the offender to a penalty of 500 dollars, and prescribes a new, and different penalty, recoverable by indictment; and is plainly repugnant to the act of 1793.

A seeming difficulty exists, in the concluding part of the seventh section of the new act, which awards civil compensation to the owner for the loss of each slave, if that loss was occasioned by any one of the illegal acts that are made indictable: but no recovery under, and by force of the statute, can be had, unless the owner has lost the slave. The policy of the law is

obvious. On trials, illegal conduct, and loss, might be fully established; but then, the wide range of proof, as to value, could still, in effect, defeat the suit by a verdict for low damages: and therefore Congress fixed the value alike in every case of loss, and took the assessment of damages from the jury. This provision is new, and inconsistent with the 4th section of the act of 1793, in this: The former act imposes a penalty of five hundred dollars, in the enumerated cases, regardless of any actual loss on the part of the owner: whereas, for the same offences, the act of 1850 allows civil damages of one thousand dollars for each slave lost; but nothing when he is regained — loss being the ground of action: nevertheless, the party injured is left to his common-law remedy for any damage he may have sustained short of actual loss of the slave by the illegal conduct of the offending party: and for actual loss also, if he prefers and elects that remedy to an action for civil damages under the statute — but both modes cannot be pursued.

We therefore answer, to the first question certified, that the act of 1850 has repealed, so far as relates to the penalty, the fourth section of the act of 1793.

The next question referred to us for decision, presents no difficulty.

The suit was pending below when the act of September 18, 1850, was passed, and was for the penalty of 500 dollars, secured by the 4th section of the act of 1793. As the plaintiff's right to recover depended entirely on the statute, its repeal deprived the court of jurisdiction over the subject-matter. And in the next place, as the plaintiff had no vested right in the penalty, the legislature might discharge the defendant by repealing the law. We therefore answer, to the second question certified, that the repeal of the 4th section of the act of 1793 does bar this action, although pending at the time of the repeal.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Indiana, and on the points or questions on which the judges of the said Circuit Court were opposed in opinion, and which were certified to this court for its opinion agreeably to the act of Congress in such case made and provided, and was argued by counsel. On consideration whereof, it is the opinion of this court: —

1st. That the fourth section of the act of Congress, approved on the 2th day of February, A. D. 1793, entitled " An act respecting fugitives from justice and persons escaping from the

service of their masters," is repealed, so far as relates to the
penalty, by the act of Congress approved September 18th, 1850,
entitled, " An act to amend, and supplementary to, the act enti-
tled ' An act respecting fugitives from justice and persons
escaping from the service of their masters,' " approved February
12th, 1793.

2d. That the repeal of the said fourth section will in law bar
the present action that was pending at the time of the repeal.
Whereupon, it is now here ordered and adjudged by this court
that it be so certified to the said Circuit Court.