**CABUNAC et al. v. NATIONAL TER-MINALS CORPORATION.**

No. 8359.

Circuit Court of Appeals, Seventh Circuit.

Jan. 28, 1944.

J. G. Hardgrove and Leon F. Foley, both of Milwaukee, Wis. (Miller, Mack & Fairchild, of Milwaukee, Wis., of counsel), for appellant.

A. W. Richter, of Milwaukee, Wis., for appellee.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

This is an action brought under Section 16(b) of the Fair Labor Standards Act, 29 U.S.C.A. § 216(b), for overtime compensation, liquidated damages, and attorney fees.

Plaintiffs-appellees during the times in question were all members of Local 815, International Longshoremen's Association, their certified collective bargaining agent, and were employed on an hourly basis by the defendant-appellant as warehousemen and stevedores. Defendant, a Delaware corporation licensed to do business in Wisconsin, was engaged in the business of handling and storing merchandise transported by ships upon the Great Lakes. It is conceded that these activities were in interstate commerce.

Plaintiffs claim that they failed to receive the full amount of overtime compensation required to be paid them by Section 7 of the Act, 29 U.S.C.A. § 207. Subsection (a) of that Section requires employers engaged in or producing goods for interstate commerce to pay overtime at the rate of one and one-half times the "regular rate" of pay for all hours worked per week in excess of 44 during the first year, 42 during the second year, and 40 during the third year after the effective date of the Act.

Defendant does not deny that the plaintiffs worked longer than those maximum hours per week but claims exemption under subsection (b) of Section 7 which reads as follows:

"(b) No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of that specified in such subsection without

paying the compensation for overtime employment prescribed therein if such employee is so employed—

"(1) in pursuance of an agreement, made as a result of collective bargaining by representatives of employees certified as bona fide by the National Labor Relations Board, which provides that no employee shall be employed more than one thousand hours during any period of twenty-six consecutive weeks, * * *

and if such employee receives compensation for employment in excess of 12 hours in any workday, or for employment in excess of 56 hours in any workweek, as the case may be, at a rate not less than one and one-half times the regular rate at which he is employed."

Six contracts between the union and the defendant covered the period between the effective date of the Act and the bringing of this action on December 22, 1941. Three contracts covered stevedoring and three warehouse employment. In only two of the stevedoring contracts was there any reference to the one thousand hour provision of the Fair Labor Standards Act quoted above. Since the provisions of these two contracts are similar, only one need be set forth. The stevedoring contract dated April 15, 1940, read as follows: "J. It is further mutually agreed by both parties to this agreement that working conditions, hours and wages will be as provided in Section 7-B-1 of Fair Labor Standards Act of 1938, which provides that no employe shall be employed more than 1000 hours, nor more than 56 hours in any one week, during period of 26 consecutive weeks, commencing with effective date of this agreement. Both parties agree to extension of a second period after completion of first period. It being further understood and agreed that the Employer shall have the right to suspend the employment of any men during any week in which they have worked the maximum of 56 hours as provided in said Fair Labor Standards Act of 1938."

■■ It will be noted that instead of providing for "any period of 26 consecutive weeks," the parties designated only two definite periods of 26 weeks each. Congress intended that contracts must cover *any* period of 26 consecutive weeks in order to be exempt from the Act. This the instant contracts did not do. Furthermore, the contracts made no provision for overtime pay at time and one-half for

hours worked over 12 in any one workday or over 56 in any one workweek. If a contract is to be exempt, it must include a provision that overtime will be paid for at time and one-half the regular rate. Walling v. Stone, 7 Cir., 131 F.2d 461, 463. We agree with the District Court that these contracts do not conform to the legislative standards. They are, therefore, insufficient to exempt the defendant from the regular overtime provisions of the Act. Section 7(a).

The evidence showed that none of the plaintiffs was exclusively a stevedore or exclusively a warehouse employee. Each workman usually did a few hours of each type of work during the day, depending on the requirements of the defendant's business. However, in view of our decision that the above contract provision was not sufficient to exempt defendant from the overtime compensation provisions of Section 7(a), we need not decide whether the one thousand hour limitation in the stevedoring contracts applied while the plaintiffs were engaging in warehouse employment. It would not help the defendant now if we did hold that the limitation applied to all hours worked.

Only two subsidiary questions remain. One, the definition of the "regular rate" upon which the time and one-half for overtime is to be computed; and, two, whether the Act covered the week ending October 29, 1938. Both questions were treated thoroughly by Judge Duffy in the court below, and there is little that we can add to his careful analysis.

The contracts provided for different rates per hour for "straight time" and for "overtime." For instance, the provision governing the wages of housemen, coopers, truckers, and stowers read: "Wages for all work done between the hours of 7 a. m. and 6 p. m. shall be Seventy Five Cents (75¢) per hour, hereafter known as straight time. Wages for all work done between the hours of 6 p. m. and 7 a. m. and for all work on Sundays and the following holidays * * * shall be Eighty-Five Cents (85¢) per hour, hereafter known as overtime."

■ It seems evident to us, as it did to the District Court, that the "overtime" rate was merely the higher rate necessary to induce defendant's employees to accept employment at hours which were not very desirable from a workman's standpoint, and that this rate is the "regular rate" to be paid for work on the night shift, on

Sundays, and on certain holidays, within the meaning of the Fair Labor Standards Act.

Defendant's argument that the Act does not apply to the week ending October 29, 1938, because it did not become effective until the second day in the calendar week, that is, Monday, October 24, 1938, is untenable. In setting the effective date of this labor Act, Congress had in mind *workweeks*, not *calendar* weeks. We agree with the District Court that the first workweek started on October 24, 1938, and ended on Saturday, October 29, 1938.

The judgment of the District Court is affirmed.