BATTAGLIA et al. v. GENERAL MOTORS
CORPORATION.

HOLLAND et al. v. GENERAL MOTORS
CORPORATION.

HILGER et al. v. GENERAL MOTORS
CORPORATION.

CASHEBA v. GENERAL MOTORS
CORPORATION.

Nos. 290–293, Docket 21026–21029.

Circuit Court of Appeals,

Second Circuit.

July 8, 1948.

David Diamond, of Buffalo, N. Y. (Manly Fleischmann, of Buffalo, N. Y., of counsel), for plaintiffs-appellants.

Henry M. Hogan, of New York City (Nicholas J. Rosiello, of Detroit, Mich., of counsel), for appellee.

Tom C. Clark, Atty. Gen., H. G. Morison, Asst. Atty. Gen., George L. Grobe, U. S. Atty., of Buffalo, N. Y., John F. X. McGohey, U. S. Atty., of New York City, Enoch E. Ellison, Sp. Asst. to the Atty. Gen., and Johanna M. D'Amico, Atty. Department of Justice, of Washington, D. C., for United States as Intervenor.

Before SWAN, AUGUSTUS N. HAND and CHASE, Circuit Judges.

CHASE, Circuit Judge:

Four separate suits were brought against the appellee in the District Court for the Western District of New York by and in behalf of its employees to recover overtime pay in accordance with the provisions of the Fair Labor Standards Act of 1938,[1] as interpreted by the Supreme Court in Anderson v. Mt. Clemens Pottery Co., 328 U. S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515. While these suits were pending without adjudication, Congress enacted the Portal-to-Portal Act of 1947, 61 Stat. 84–90, 29 U.S.C.A. §§ 251–262. The appellee then moved to dismiss each of the complaints, which for present purposes may be treated as identical, on the grounds that no cause of action was alleged and that the court was without jurisdiction by virtue of section 2 of the Portal-to-Portal Act.[2] As the appellants then questioned this statute upon constitutional grounds, notice of that was given the Attorney General and he was allowed to intervene in behalf of the government in support of the validity of the Act. The motions to dismiss were granted with leave to amend within a reasonable time fixed. The plaintiffs did not amend their complaints and after the expiration of their time to do so orders were entered grant-

[1] 29 U.S.C.A. §§ 201–219, 52 Stat. 1060–1069.

[2] All other jurisdictional bases were alleged and not denied.

ing the motions to dismiss each complaint. Appeals taken by the plaintiffs from each of those orders were consolidated for hearing.

The complaints alleged a cause of action under section 16(b) of the Fair Labor Standards Act, 29 U.S.C.A. § 216(b), for overtime compensation and an additional equal amount as liquidated damages, together with reasonable attorney's fees, for time upon the employer's premises preliminary to, and after engagement in, the principal activities of the employees. This time was spent by the employees in walking to and from their work stations and walking out of their employers' premises when their principal work was done; in changing their clothes on their employer's premises before and after their main activities; in receiving their orders; in obtaining on such premises their tools and other equipment before, and in disposing of them after, their main activities; in washing and cleansing themselves after their principal work was done; and in lunch and rest periods during which their time was not entirely at their own disposal. It was not alleged that the compensation sought was for activities which were compensable by an express provision of a written or nonwritten contract, or by a custom or practice, in effect at the time of the activities and at the place of employment. Consequently, appellants did not meet the condi-

tions of subdivision (a) of section 2 of the Portal-to-Portal Act on showing the employer's liability under the Fair Labor Standards Act, nor did they comply with the jurisdictional requirements of subdivision (d) of that section of the Act.[3]

██ In this way the issue of the constitutionality of this section of the Portal-to-Portal Act has been presented by these appeals. Though the appellants do not contend here, as they did below, that the question is premature since there was no trial on the merits, we deem it necessary to determine this point on our own motion. We think that the issue of constitutionality was properly raised by motion in each case before trial. Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following § 723c. It was the duty of the court to ascertain whether it had jurisdiction before proceeding to hear and decide the case on the merits. Emmons v. Smitt, 6 Cir., 149 F.2d 869, certiorari denied, 326 U.S. 746, 66 S.Ct. 59, 90 L.Ed. 446; Ex parte Mc-Cardle, 7 Wall. 506, 19 L.Ed. 264; see Smith v. McCullough, 270 U.S. 456, 459, 46 S.Ct. 338, 70 L.Ed. 682; Rule 12(h), Federal Rules of Civil Procedure, 28 U.S.C.A. following § 723c. The allegation of facts to show jurisdiction in the district court is a prerequisite to the trial of an action on the merits. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Donnelly Garment Co. v.

---

[3] "(a) No employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act (in any action or proceeding commenced prior to or on or after May 14, 1947), on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any activity of an employee engaged in prior to May 14, 1947, except an activity which was compensable by either—

"(1) An express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; or

"(2) a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee was employed, covering such activity, not inconsistent with a written or

nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

\* \* \* \* \* \*

"(d) No court of the United States, of any State, Territory, or possession of the United States, or of the District of Columbia, shall have jurisdiction of any action or proceeding, whether instituted prior to or on or after May 14, 1947, to enforce liability or impose punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, under the Walsh-Healey Act, or under the Bacon-Davis Act, to the extent that such action or proceeding seeks to enforce any liability or impose any punishment with respect to an activity which was not compensable under subsections (a) and (b) of this section." 29 U.S.C.A. § 252.

International Ladies' Garment Workers' Union, 8 Cir., 99 F.2d 309, 316, certiorari denied, 305 U.S. 662, 59 S.Ct. 364, 83 L.Ed. 430; 28 U.S.C.A. § 380. Unlike the situation in Ward Baking Co. v. Holtzoff, 2 Cir., 164 F.2d 34, 36, where we said that, "It is inexpedient to attempt to decide a constitutional question such as this in vacuo," there were no allegations of fact which if proved would have permitted recovery whether or not the Portal-to-Portal Act were valid. If subdivision (d) of section 2 of that Act is valid the lack of jurisdiction is clear and if subdivisions (a) and (b) of section 2 are valid it is equally apparent that no cause of action on the merits was alleged. We think the dismissal of each cause of action right, for the following reasons.

■ A few of the district court decisions sustaining section 2 of the Portal-to-Portal Act have done so on the ground that since jurisdiction of federal courts other than the Supreme Court is conferred by Congress, it may at the will of Congress be taken away in whole or in part. E. g., Boehle v. Electro Metallurgical Co., D.C. Or., 72 F.Supp. 21; Story v. Todd Houston Shipbuilding Corp., D.C.S.D. Tex., 72 F.Supp. 690; Johnson v. Park City Consol. Mines Co., D.C.E.D. Mo., 73 F.Supp. 852; Quinn v. California Shipbuilding Corp., D.C.S.D. Cal., 76 F.Supp. 742; Grazeski v. Federal Shipbuildings & Dry Dock Co., D. C. N.J., 76 F.Supp. 845. Relying upon a statement of the Supreme Court in Kline v. Burke Construction Co., 260 U.S. 226, 234, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077, and on cases like Norris v. Crocker, 13 How. 429, 14 L.Ed. 210; Ex parte Mc-Cardle, 7 Wall. 506, 19 L.Ed. 264; and Assessors v. Osbornes, 9 Wall. 567, 19 L. Ed. 748, these district court decisions would, in effect, sustain subdivision (d) of section 2 of the Act regardless of whether subdivisions (a) and (b) were valid. We think, however, that the exercise by Congress of its control over jurisdiction is subject to compliance with at least the requirements of the Fifth Amendment. That is to say, while Congress has the undoubted power to give, withhold, and restrict the jurisdiction of courts other than the Supreme Court,[4] it must not so exercise that power as to deprive any person of life, liberty, or property without due process of law or to take private property without just compensation. Graham & Foster v. Goodcell, 282 U.S. 409, 431, 51 S.Ct. 186, 75 L.Ed. 415; cf. Brinkerhoff-Faris Trust & Savings Co. v. Hill, 281 U.S. 673, 682, 50 S.Ct. 451, 74 L.Ed. 1107; see also Lynch v. United States, 292 U.S. 571, 580, 54 S.Ct. 840, 78 L.Ed. 1434; Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106. Thus, regardless of whether subdivision (d) of section 2 had an independent end in itself,[5] if one of its effects would be to deprive the appellants of property without due process or just compensation, it would be invalid. Under this view, subdivision (d) on the one hand and subdivisions (a) and (b) on the other will stand or fall together. We turn then to a consideration of the question whether the appellants have been unconstitutionally deprived of any substantive rights.

■ It is contended that, while the employees' rights to overtime compensation[6]

---

[4] It also has the power, of course, to make "exceptions" to and "regulations" regarding the Supreme Court's appellate jurisdiction. Const. Art. III, § 2.

[5] It may be, as appellee argues, that it did, viz., to relieve the courts and the employers of the burden of going to trial.

[6] As Congress has apparently seen fit, in section 2 of the Portal-to-Portal Act, the only section here in question, to draw no distinction between the liability for overtime compensation on the one hand and those for liquidated damages and reasonable attorney's fees on the other, we shall assume that if section 2 is invalid as regards the liability for overtime compensation or minimum wages it is also invalid as to the other liabilities. Since we do this, and since we decide that section 2 is valid even as regards the liability for overtime compensation, we need not here pass upon whether that section is valid as regards the liability for liquidated damages as a regulation of interest, Curtis v. McWilliams Dredging Co., 191 Misc. 1022, 78 N.Y.S.2d 317, 333, and as regards the liability for reasonable attorney's fees as the modification of a statute conferring a gratuity, Ackerman v. J. I. Case Co., D.C., E.D.Wis., 74 F. Supp. 639, 643.

ultimately flow from the Fair Labor Standards Act, they are also in some sense "contractual" in nature and hence were vested. And it is well settled that contracts made by private parties must necessarily be construed in the light of the applicable law at the time of their execution. See 3 Williston on Contracts (Rev.Ed.) Sec. 615. These appellants' contracts of employment with the appellee were made before the Fair Labor Standards Act was enacted.[7] Thus it cannot be said that the contracts were "made," as the appellants put it, with reference to the provisions of that Act. Perhaps it can be argued, however that upon the enactment of that Act, it was adopted by the parties as a part of their agreement. See Roland Electrical Co. v. Black, 4 Cir., 163 F.2d 417, appeal pending. If this be true, then the contracts would, of course, have to be read in connection with, among other provisions, section 7, 29 U.S. C.A. § 207, providing for payment of one and one-half times the regular rate for hours worked in excess of a "work-week" of forty-four hours during the first effective year of the Act, forty-two hours the second year, and forty hours thereafter.

But, assuming the contracts were thus modified, at the time of the modification the decisions in Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014; Jewell Ridge Coal Corp. v. Local No. 6167, U. M. W., 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534; and Anderson v. Mt. Clemens Pottery Co., supra—all of them so construing section 7 as to include time spent in so-called portal to portal activities in the "work-week" of employees —had not been handed down. Williston says, in Sec. 615 noted above, "Doubtless law frequently is adopted by the parties as a portion of their agreement. Whether it is or not in any particular case should be determined by the same standard of interpretation as is applied to their expres-

sions in other respects." Congress has found in section 1(a) of the Portal-to-Portal Act that the liabilities created by the Supreme Court decisions above noted were "wholly unexpected" and that under those decisions the "employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay." And the appellants apparently do not dispute these findings. If we accept them, and consider that at the time the original contracts of employment were modified to take into account the enactment of the Fair Labor Standards Act neither employer nor employee had any reason to believe that portal to portal activities were compensable under it, then it would seem to follow that, at least to the time of those decisions, any rights the employees had to such compensation were not in any sense "contractual."[8]

At the same time, if it can be said that the contracts of employment were modified upon the enactment of the Fair Labor Standards Act, perhaps it also can be said that when those decisions were made, the contracts of employment were again modified so as to take the judicially established law into consideration. Were this the case, even if the rights of the employees were purely statutory up to the time of those decisions, thereafter they were based upon contract.

Finally, while the liabilities may have been wholly "unexpected" in the sense that neither employer nor employee anticipated that they would accrue, it might be contended that the original contracts were modified in reliance upon section 7, however it might be construed in futuro by the courts.

■ Thus, there are, we think, three ways in which the employees' rights to compensation for these activities may be viewed: first, as wholly statutory up to the

---

[7] This is to be inferred from the fact that the complaints all allege violations of the Fair Labor Standards Act beginning with what has been held to be its effective date, October 24, 1938. Cabunac v. National Terminals Corp., 7 Cir., 139 F.2d 853.

[8] In this respect, cases like Pacific Mail S. S. Co. v. Joliffe, 2 Wall. 450, 17 L.Ed. 805—relied upon by appellants— where the plaintiff's services were considered to have been tendered in reliance on a statute expressly covering the situation, would be readily distinguishable.

time the Portal-to-Portal Act was enacted; second, as purely statutory up to the time of the Supreme Court decisions [9] and contractual thereafter; and finally, as wholly contractual from the beginning. We need not now decide whether to consider the Congressional findings as determinative, or to take some other view of the situation, for we think that however appellants' rights are considered, the Portal-to-Portal Act is constitutional.

This seems plain enough, if we take the view that the claims rested purely on statute up to the time the Portal-to-Portal Act was enacted. Clearly, the general rule is that "powers derived wholly from a statute are extinguished by its repeal." Flanigan v. County of Sierra, 196 U.S. 553, 560, 25 S.Ct. 314, 315, 49 L.Ed. 597. The Supreme Court, moreover, has told us that rights granted to employees under the Fair Labor Standards Act have a "private-public character" and has indicated that they are "charged or colored with the public interest." See Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 704, 709, 65 S.Ct. 895, 903, 89 L.Ed. 1296. Congress has also found that it "is in the national public interest and for the general welfare, essential to national defense and necessary to aid, protect, and foster commerce" that the Portal-to-Portal Act be enacted. 29 U.S.C.A. § 251(a). This being true, so long as the claims, if they were purely statutory, had not ripened into final judgment, regardless of whether the activities on which they were based had been performed, they were subject to whatever action Congress might take with respect to them. Western Union Tel. Co. v. Louisville & Nashville R. Co., 258 U.S. 13, 42 S.Ct. 258, 66 L.Ed. 437; see also Norris v. Crocker, 13 How. 429, 14 L.Ed. 210;

Ewell v. Daggs, 108 U.S. 143, 151, 2 S.Ct. 408, 27 L.Ed. 682; Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483; Pearsall v. Great Northern R. Co., 161 U.S. 646, 673, 674, 16 S.Ct. 705, 40 L.Ed. 838; West Side Belt. R. Co. v. Pittsburgh Const. Co., 219 U.S. 92, 31 S.Ct. 196, 55 L.Ed. 107; Chase Securities Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628; Fleming v. Rhodes, 331 U.S. 100, 109, 67 S.Ct. 1140, 91 L.Ed. 1368; United States ex rel. Rodriguez v. Weekly Publications, 2 Cir., 144 F.2d 186; National Carloading Corp. v. Phoenix-El Paso Express, 142 Tex. 141, 176 S.W.2d 564, 569, 570, certiorari denied, 322 U.S. 747, 64 S.Ct. 1156, 88 L.Ed. 1578.

If however, the rights were statutory up to the time of the Supreme Court decisions and contractual thereafter, or if they were founded upon contract from the time of the enactment of the Fair Labor Standards Act, the problem is not so simple,[10] for there are a number of cases holding that it is a violation of due process to deprive an individual of previously vested contractual rights. Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; Pacific Mail S. S. Co. v. Joliffe, 2 Wall. 450, 17 L.Ed. 805; Ettor v. City of Tacoma, 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773; Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District, 258 U.S. 338, 42 S.Ct. 325, 66 L.Ed. 647; Coombes v. Getz, 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866.

But the solution to the problem seems quite as clear. The Portal-to-Portal Act, like the Fair Labor Standards Act, was passed as an exercise of the power to regulate commerce from time to time as conditions may require. The Congressional findings,[11] made after investigations

9 For reasons that will appear below, for our purposes it matters not which of the three decisions is considered decisive in this respect.

10 The complaints are for work up to the time of their filing, December, 1946 and January, 1947. The Mt. Clemens case was decided on June 10, 1946. Congress appears not to distinguish between activities engaged in up to the time of the Supreme Court decisions and activities engaged in thereafter. We

shall assume, therefore, that if section 2 is invalid as to rights arising after those decisions, it is invalid as a whole. Thus the problem is the same whether appellants' rights are considered as statutory up to the time of the decisions and contractual thereafter or as contractual from the beginning.

11 Section 1(a) of the Portal-to-Portal Act reads in part as follows:

"The Congress finds that the Fair Labor Standards Act of 1938, as amended,

which disclosed amply supporting facts, show fully why the enactment of the Portal-to-Portal Act was necessary to avoid great injury to interstate commerce.[12] In the Act Congress saw fit to change the Fair Labor Standards Act, which might be said previously to have made the appellants' contracts of employment include the right to compensation for portal to portal activities, by doing away with so much of those contracts in that respect as that statute had added to them. This did not deprive the appellants of any Constitutional right. If the contractual arrangements of these private parties were subject to the Fair Labor Standards Act as it might be interpreted by the courts, or were modified to take into consideration decisions construing that statute, they were also subject to changes made in it by Congress in the exercise of its power to regulate commerce. Very closely in point is Louisville & Nash-

---

has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others, thereby resulting in the reduction of industrial operations, halting of expansion and development, curtailing employment, and the earning power of employees; (2) the credit of many employers would be seriously impaired; (3) there would be created both an extended and continuous uncertainty on the part of industry, both employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions between employers and between industries; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers and between employees and employees would be created; (7) the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged; (8) the Public Treasury would be deprived of large sums of revenues and public finances would be seriously deranged by claims against the Public Treasury for refunds of taxes already paid; (9) the cost to the Government of goods and services heretofore and hereafter purchased by its various departments and agencies would be unreasonably increased and the Public Treasury would be seriously affected by consequent increased cost of war contracts; and (10) serious and adverse effects upon the revenues of Federal, State, and local governments would occur.

"The Congress further finds that all of the foregoing constitutes a substantial burden on commerce and a substantial obstruction to the free flow of goods in commerce.

"The Congress, therefore, further finds and declares that it is in the national public interest and for the general welfare, essential to national defense, and necessary to aid, protect, and foster commerce, that this Act be enacted.

"The Congress further finds that the varying and extended period of time for which, under the laws of the several States, potential retroactive liability may be imposed upon employers, have given and will give rise to great difficulties in the sound and orderly conduct of business and industry. * * *" 29 U.S.C. A. § 251(a).

[12] It is contended that, even assuming that all portal to portal claims were recovered, "there is not a financial problem of such magnitude as to make it a matter of national concern and justify the exercise of Congressional power to relieve the particular employers involved in these suits." And it is stated that the "insignificance to our national economy of even the total alleged claims" is clear. These, however, are matters which, as was said in Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 394, 60 S.Ct. 907, 913, 84 L.Ed. 1263, "relate to questions of policy, to the wisdom of the legislation, and to the appropriateness of the remedy chosen—matters which are not our concern. If we endeavored to appraise them we would be trespassing on the legislative domain." See also American Power & Light Co. v. Securities & Exch. Commission, 329 U.S. 90, 99, 67 S.Ct. 133, 91 L.Ed. 103.

ville R. Co. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A.,N.S., 671, where a contract to furnish transportation free of charge—valid when made and based upon adequate consideration—was held unenforceable when Congress later, in the exercise of its commerce power, made it unlawful for railroads to provide such transportation. The private contract to furnish free transportation was totally destroyed. The Supreme Court there said: "The agreement between the railroad company and the Mottleys must necessarily be regarded as having been made subject to the possibility that, as some future time, Congress might so exert its whole constitutional power in regulating interstate commerce as to render that agreement unenforceable, or to impair its value. That the exercise of such power may be hampered or restricted to any extent by contracts previously made between individuals or corporations is inconceivable. * * * If that principle be not sound, the result would be individuals and corporations could, by contracts between themselves, in anticipation of legislation, render of no avail the exercise by Congress, to the full extent authorized by the Constitution, of its power to regulate commerce. No power of Congress can be thus restricted." 219 U.S. at pages 482, 485, 486, 31 S.Ct. at page 270; Addyston Pipe & Steel Co. v. United States, 175 U.S. 211, 228, 229, 20 S.Ct. 96, 44 L.Ed. 136; Scranton v. Wheeler, 179 U.S. 141, 162, 163, 21 S.Ct. 48, 45 L.Ed. 126; Union Bridge Co. v. United States, 204 U.S. 364, 400, 27 S.Ct. 367, 51 L.Ed. 523; cf. Norman v. Baltimore & Ohio R. Co., 294 U.S. 240, 307, 308, 55 S.Ct. 407, 79 L.Ed. 885, 95 A.L.R. 1352. The controlling principle was said, in Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 435, 54 S.Ct. 231, 239, 78 L.Ed. 413, 88 A.L.R. 1481, to be that: "Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order."[13] And this principle is not limited to cases where the effect of the exercise of Congressional power upon pre-existing contracts is only incidental. Norman v. Baltimore & Ohio R. Co., supra, 294 U.S. at page 309, 55 S. Ct. 407.

It is the fact that here Congress was exercising its commerce power, which, we think, primarily serves to distinguish the cases relied upon by appellants. The Joliffe, Ettor, Forbes Pioneer Boat Line, and Coombes cases, supra, all dealt with state statutes or constitutional provisions repealing prior state laws. And in Lynch v. United States, supra, appellants' only case dealing with a Congressional statute, the principle that the reservation of sovereign powers is read into contracts was, we think, expressly recognized: the court there pointed out that, "The Solicitor General does not suggest either in brief or argument that there were supervening conditions which authorized Congress to abrogate these contracts in the exercise of the police or any other power." 292 U.S. at pages 579, 580, 54 S.Ct. at page 844.

This is not to say, of course, that Congress may exercise its commerce power in a discriminatory or arbitrary manner. We need not go so far. Faced with what it reasonably considered a situation relating to commerce that called for legislative action, Congress, after a thorough investigation, enacted the Portal-to-Portal Act. It cannot be said that, in so doing, Congress acted arbitrarily. It is not even suggested that it acted discriminatorily.[14] Clearly the Act did not violate the Fifth Amendment in so far as it may have withdrawn from private individuals, these appellants, any rights they may said to have had which rested upon private contracts they had made.

 Nor is the Portal-to-Portal Act a violation of Article III of the Constitution

---

[13] See also Fleming v. Rhodes, 331 U. S. 100, 107, 67 S.Ct. 1140, 91 L.Ed. 1368, and Legal Tender Cases (Knox v. Lee) 12 Wall. 457, 20 L.Ed. 287.

[14] Except to the extent that it distinguished between activities engaged in prior to and those engaged in after the passage of the Act—a "discrimination" which is immaterial in so far as the Fifth Amendment is concerned.

262

or an encroachment upon the separate power of the judiciary. True enough, decisions of the Supreme Court played their part in creating the conditions Congress undertook to remedy, as it expressly stated in section 1(a) of the Act. But those decisions were construing a previously enacted statute. The regulatory legislation did not attempt to change those decisions in any way, or to impose upon the courts any rule of decision not in conformity with basic legal concepts, as in United States v. Klein, 13 Wall. 128, 20 L.Ed. 519.[15] On the contrary, it left express private contracts and those implied in fact, except to the extent that they may be said to have had reference to prior statutory law, untouched and enforceable in the courts as before under the applicable legal principles. It did not require repayment of any money paid in reliance upon the decisions of the Supreme Court. It left valid final judgments for portal-to-portal pay. Since Congress, for the reasons heretofore stated, otherwise had the power to enact the Portal-to-Portal Act, the fact that one of the Act's incidental effects is to prevent the courts from following the Tennessee Coal Iron & R. Co., Jewell Ridge Coal Corp., and Mt. Clemens Pottery cases, is of no importance. See Stockdale v. Atlantic Insurance Co. of New Orleans, 20 Wall. 323, 22 L.Ed. 348; Graham & Foster v. Goodcell, 282 U.S. 409, 51 S.Ct. 186, 75 L.Ed. 415. We find ourselves, then, in agreement with the decision of the Circuit Court of Appeals for the Fourth Circuit in Seese v. Bethlehem Steel Co., 4 Cir., 168 F.2d 58.

Judgments affirmed.

[15] It is contended that Congress, by distinguishing more or less between claims arising prior to the enactment of the Act and those arising thereafter, permitting by virtue of section 4 recovery for all activities compensable under the Fair Labor Standards Act and performed after the passage of the Act except those "preliminary to or postliminary to said principal activity or activities," has thus constituted itself "judge and jury" in the "plainest possible violation" of Article III, § 1. We think, however, that such a distinction was a wholly reasonable one to make. One of the primary reasons for the passage of the Portal-to-Portal Act was the fact that, according to the Congressional findings in section 1(a), liabilities for activities performed prior to the Supreme Court decisions were "wholly unexpected" and "retroactive in operation." This of course, was not true as to activities engaged in after the enactment of the Act.